Thomas J. STRAWSER and Barbara Strawser, husband and wife, Petitioners,

v.

EXXON COMPANY, U.S.A., A DIVISION OF EXXON CORP., a New Jersey corporation, Respondent.

No. 91–139.

Supreme Court of Wyoming.

Dec. 14, 1992.

Juline Christofferson, Jackson, and Joseph E. Darrah, Powell, for petitioners.

Marilyn S. Kite and Joe M. Teig of Holland & Hart, Cheyenne, and Charles G. Bakaly, Jr. and David M. Fox of O'Melveny & Myers, New York City, for respondent.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT* and GOLDEN, JJ.

URBIGKIT, Justice.

In granting a petition for writ of certiorari in a case of first impression for Wyoming, we must decide whether petitioners' counsel is entitled to conduct ex parte interviews with a corporation's present and former employees in an action claiming defamation and invasion of privacy. In reaching our decision, we are invited to examine Rule 4.2 of the Wyoming Rules of Professional Conduct for Attorneys at Law and the various "tests" adopted in other jurisdictions which govern adverse litigant ex parte discovery interviews with present and past corporate employees.

In considering the issue of this appeal, which presents a first impression for this court, we will not adopt the general standard used by the district court in entry of the completely preclusive protective order. We adopt the more limited standard of the "alter ego" or "binding admission" test established in *Niesig v. Team I,* 76 N.Y.2d

363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990) and find no general preclusion for contact with former employees. *In re Environmental Ins. Declaratory Judgment Actions,* 252 N.J.Super. 510, 600 A.2d 165 (1991).

## I. ISSUES

In granting the petition for writ of certiorari to review the district court's protective order, we identified and the parties have addressed the following issues:

1. Whether plaintiffs should be prohibited from conducting ex parte interviews with all past or present Exxon employees or contacting prospective interviewees unless notice to defendant Exxon Corporation is given and a person from the law firm of Holland & Hart is present at all times during the interview.

2. Whether plaintiffs must produce all documents and statements obtained during ex parte interviews previously conducted by plaintiff[s] of Exxon employees and supervisors, such documents and statements to include all tapes, transcripts and notes used to record such interviews.

3. Whether plaintiffs Thomas Strawser and Barbara Strawser should be prohibited from discussing their lawsuit with any Exxon employee, past or present.

4. Whether irreparable harm will result from the lower court's holding.

## II. FACTS AND TRIAL PROCEEDINGS

Thomas J. Strawser (Strawser) went to work for the Exxon Company, U.S.A. (Exxon) as a chemical engineer in 1981. In February 1985, Strawser was assigned to Exxon's gas dehydration facility near LaBarge in Sublette County, Wyoming, where he served in a supervisory capacity as a field foreman and senior engineer. However, in September 1989, following Exxon's implementation of a revised drug and alcohol policy which reclassified certain employment positions on the basis of safety

---

* Chief Justice at time of oral argument.

considerations, Strawser was transferred to a similar but "non-designated"[1] supervisory position at an Exxon facility in Campbell County, Wyoming.

On August 21, 1990, Strawser and his wife, Barbara, filed a complaint against Exxon, Larry Kennedy and Weldon W. Whitaker[2] alleging invasion of privacy and defamation. In effect, the Strawsers' complaint alleged that Exxon's 1989 implementation of an "ill-advised" and "reactionary" alcohol and drug policy following an oil tanker catastrophe in Alaska (the Exxon "Valdez" oil spill incident) as well as the acts of various Exxon employees in publicly disclosing Strawser's confidential history of alcohol abuse defamed Strawser and violated the Strawsers' rights to privacy.

As part of discovery, the Strawsers' counsel and a hired investigator began informally interviewing various Exxon employees.[3] In response, on April 8, 1991,

---

1. Although copies of the various Exxon drug and alcohol policies in effect at different times during the 1980s were not made part of the record in this certiorari proceeding, it appears that Exxon's 1989 policy created "designated" and "non-designated" safety status distinctions for certain employee positions. For purposes of describing the 1989 policy modification, we note the following from the Strawsers' complaint:

> 5. That prior to 1981, and prior to his employment with EXXON, THOMAS [Strawser] considered himself to have an alcohol abuse problem for which he had at all times herein relevant successfully sought therapeutic consultation and treatment, and in 1981 through the present has not on any occasion been intoxicated by alcoholic beverages. That THOMAS communicated in a confidential manner in 1988 to Defendants Kennedy and EXXON that he had previously been guilty of alcohol abuse and was attending the organization Alcoholics Anonymous.
>
> Prior to the summer of 1989, EXXON, as was a generally-accepted practice industry-wide, had a policy of voluntary, self-identification, wherein the information was completely voluntary and representations were made that the responses would not affect the informant's employment in any manner. That in January of 1987 EXXON issued a policy which recognized alcoholism as a treatable illness, and stated a policy that "no employee with alcoholism will have his or her job security or future opportunities jeopardized due to a request for help or involvement in a rehabilitation effort", further adopting a policy in February of 1987 recognizing alcoholism as a treatable condition and stating "no employee with alcohol or drug dependency will be terminated or otherwise disciplined solely due to a request for help in overcoming that dependency because of involvement in a rehabilitation effort". That THOMAS relied upon such policies and candidly informed Defendants Kennedy and EXXON in a confidential manner as aforesaid, even though THOMAS had not been guilty of alcohol abuse for many years previously. That said confidential information was given to Defendant Kennedy with the express assurance and request of EXXON's medical department doctor on staff that THOMAS should do so to get a transfer from shift work as EXXON fully supported anyone who had already submitted to an alcohol abuse program and such information would be strictly confidential.
>
> 6. That on or about July 28, 1989, THOMAS was informed by Defendant Kennedy that EXXON was going to implement a new drug and alcohol policy that would affect him in that the policy was going to be applicable to certain "designated" positions, one of which was THOMAS' job title. The policy provided that no one who had ever attended Alcoholics Anonymous or had gone to rehabilitation would be allowed to hold the "designated" positions. Said policy was to become effective September 1, 1989. That while the information given to Defendant Kennedy was given in the confidence and assurance that it would not be related except to Kennedy's immediate supervisor, Plaintiff THOMAS is informed and believes that such information was nonetheless given to many other sources and individuals.

2. Co-defendants Kennedy and Whitaker were co-workers of Strawser at Exxon's Sublette County gas dehydration facility.

3. Counsel for the Strawsers acknowledge that they conducted informal telephone interviews with approximately thirty-five Exxon employees. Further, in their Verified Petition for Writ of Certiorari, petitioners state:

> c. None of the Exxon employees interviewed hold positions deemed "managerial," although two of the employees interviewed hold "supervisory" positions. In fact nearly all of the employees held positions inferior to or under the pay status of [Strawser].
>
> d. None of the Exxon employees interviewed are or were in a position to bind Exxon in any way in this cause of action.
>
> e. The information solicited from Exxon employees concerned their personal knowledge regarding Plaintiff Mr. Strawser's involvement with Alcoholics Anonymous and any problems he might have associated with alcohol abuse. It did not concern issues involving the scope of the employee's employment or agency.

Exxon filed a motion for a total protective order under the stated basis of W.R.C.P. 26(c) (now W.R.C.P. 26(d)) to prohibit the Strawsers, their counsel and the investigator from conducting ex parte interviews with all current and former Exxon managers and employees.

Following a hearing,[4] the district court generally granted the relief Exxon requested in its motion. In its written order, the district court stated:

Defendant Exxon Corporation's Motion for Protective Order prohibiting Plaintiffs from conducting ex parte interviews with Exxon managers and employees having come on for hearing before this Court on May 3, 1991, and Plaintiffs appearing by their attorneys, Joseph E. Darrah and Juline Christofferson, and Defendant Exxon Corporation appearing by one of its attorneys, Joe M. Teig, and Defendants Kennedy and Whitaker appearing by their attorney, Robert B. Ranck, and the Court having heard the argument of counsel and having considered the Briefs and the Court being otherwise fully advised in the premises;

IT IS ORDERED:

1. Defendant Exxon Corporation's Motion for Protective Order prohibiting Plaintiffs from conducting ex parte interviews with Exxon managers and employees is hereby granted.

2. Plaintiffs be and they are hereby prohibited from conducting further unauthorized ex parte interviews with Exxon employees and managers, past or present.

3. Any interviews by the Plaintiffs of Exxon employees and managers, past or present shall be conducted only after notice to Defendant Exxon Corporation and an opportunity for a person from the law firm of Holland & Hart being present at all times during the interview.

4. Plaintiffs shall within thirty (30) days from the date of this Order produce all documents and statements obtained during ex parte interviews previously conducted by Plaintiff of Exxon employees and managers, such documents and statements to include all tapes, transcripts and notes used to record such interviews.

5. Plaintiffs Thomas Strawser and Barbara Strawser are prohibited from discussing their lawsuit with any Exxon employees, past or present.

6. In the event someone refuses to talk with Exxon attorneys present, Plaintiffs are precluded from talking with those people.

7. Plaintiffs shall not call the prospective interviewees first and advise them as to what Plaintiffs are interested in asking them and then calling the Exxon attorneys. Such conduct will be deemed an ex parte communication in violation of this Order.

8. The times and places of the interviews will have to be at the mutual convenience of everyone concerned.

9. The Court reserves a ruling with regard to the admissibility of evidence obtained by Plaintiffs during previous ex

---

f. All interviews were voluntary, but many employees were concerned about retaliation from Exxon and wish that their communications be kept confidential. Many of the employees came forth in a confidential manner previous to Plaintiffs even hiring their attorneys.

g. All interviews and information were gathered for many months with the knowledge of and without the objection of Exxon, pursuant to Rule 4.2, and the overwhelming case law supporting the same.

h. Exxon knew the interviews were taking place and did nothing for many months until the interviews had been nearly completed. Characterizing the ex parte interviews in a far different light, Exxon argues that the Strawsers'

counsel conducted interviews with at least two employees with "significant managerial responsibilities" and that such interviews demonstrate counsel's willingness to "delve into privileged communications between Exxon employees and Exxon's counsel." Further, Exxon asserts that counsel violated Rule 4.2 of the Wyoming Rules of Professional Conduct by interviewing Exxon employees whose acts they intend to impute to Exxon as a basis for civil liability.

**4.** Although the district court's May 16, 1991 protective order indicated that a May 3, 1991 hearing was held, we find nothing in the record to indicate what transpired at that hearing. The record does not contain any transcript or other record of that court proceeding.

parte interviews with Exxon employees and managers.

Following issuance of the protective order, the Strawsers moved for reconsideration. Following denial by the district court, the Strawsers petitioned the Wyoming Supreme Court for a writ of certiorari, which we granted, for review of the district court's decision.

## III. DISCUSSION

### A. *Standard of Review*

█ In petitioning for a writ of certiorari in this case, the Strawsers contend that the district court erred by entering an inequitable protective order and seek a remedy of annulment or vacation of the district court's order. Our normal standard for reviewing protective orders in the discovery stage of a legal proceeding is well established. In *Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174, 1177 (Wyo.1986), we stated:

> The rule is that the trial court has broad discretion in controlling discovery. *Mauch v. Stanley Structures, Inc.*, Wyo., 641 P.2d 1247 (1982). This broad discretion has been applied in the specific area of protective orders. *Penthouse International Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 391 (2d Cir.1981).

In *ANR Production Co. v. Wyoming Oil and Gas Conservation Com'n*, 800 P.2d 492, 496 (Wyo.1990), we considered a district court's exercise of discretion under an "abuse of discretion" standard:

> A discretional decision by a district court will only be reversed upon a showing of abuse of discretion. "[A]buse of discretion has as its anchor point the query of 'whether the court could reasonably conclude as it did.'" *Oien v. State*, 797 P.2d 544, 549 (Wyo.1990) (quoting *Noet-*

*zelmann v. State*, 721 P.2d 579, 583 (Wyo.1986)).

This decision does not present the usual discretion review since examination of the standard for corporate employee contact in an investigative interview encompasses a legal decision which we address without deference to the trial court. *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781 (Wyo. 1989). For this subject, previously unaddressed by this court, we discern that the proper ex parte corporation employee interview rule is different from the standard the district court embraced. Consequently, the appropriate rule is established by this court as a question of law. *City of Laramie v. Hysong*, 808 P.2d 199 (Wyo.1991). Accordingly, any exercise of discretion by the district court is limited by rules of law which are a responsibility of this court for the finite decision. *Farr v. Link*, 746 P.2d 431, 433 (Wyo.1987).

### B. *Applicable Rule of Lawyer Conduct*

The primary focus of Rule 4.2 of Wyoming's Rules of Professional Conduct is to identify limitations for a litigant's contact with corporate employees.[5]

**Rule 4.2. Communication with person represented by counsel.**

> In representing a client, a lawyer shall not communicate about the subject of the representation with a *party* the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

(Emphasis added.)

When a corporation is a "party" in a lawsuit, the question arises as to whether

---

**5.** Rule 4.2 is substantially identical to Disciplinary Rule 7–104(A)(1) of the American Bar Association Model Code of Professional Responsibility. *See, e.g., Dent v. Kaufman*, 185 W.Va. 171, 406 S.E.2d 68, 71 (1991) ("Rule 4.2 is functionally identical to" DR 7–104(A)(1)) and 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 4.2:101, at 730 (1992) (Rule 4.2 "is taken virtually verbatim from DR 7–104(A)(1) of the Code of Professional Responsibility").

Prior to the Wyoming Supreme Court's adoption of the Model Rules of Professional Conduct effective January 12, 1987, Wyoming had followed the ABA Model Code. Although several of the cases cited in this analysis involve application of Disciplinary Rule 7–104(A)(1) rather than Model Rule 4.2, the fundamental similarities between the rules and their underlying purposes eliminate any need for us to distinguish between the cases interpreting the two rules.

current and/or former employees of the corporation qualify as represented "parties" under Rule 4.2. Subsection [2] of the official comment [6] to Rule 4.2 assists in this inquiry:

> ■ In the case of an organization, this Rule prohibits communications by a lawyer for one (1) party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

*See Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F.Supp. 899, 902 (E.D.Pa.1991).

It is obvious from the record that the Strawsers, Exxon and the district court discovered an unsettled area of Wyoming law (to say nothing of the multifarious split in authority across the country)[7] when Exxon moved for the protective order which is at issue in this certiorari proceeding. Although the district court's order prohibited informal interviews with both current and former Exxon employees, we distinguish between past and present employment status and will consider each separately.

### C. *Standard for Current Employees*

■ In support of its motion for a protective order, Exxon contended in briefing that counsel for Strawsers breached an attorney's ethical limitations pursuant to Rule 4.2 by conducting ex parte interviews with at least two Exxon managers and numerous other non-managerial Exxon employees. Exxon relied primarily upon a federal magistrate's order denying a plaintiff's motion to compel in *Johnson v. Celsius Energy Co.,* 1989 WL 260153 (D.Wyo. 1989) (No. C88–0227–B, decided 3/13/89). In *Johnson,* the magistrate found "no authority on the point from any court in Wyoming, and indeed finds little guidance from any other jurisdiction on how to draw the line between employees who fall within the protection of Rule 4.2 and those who do not." *Id.,* Order on Plaintiffs' Motion to Compel, 3. Quoting from *Mills Land and Water Co. v. Golden West Refining Co.,* 186 Cal.App.3d 116, 230 Cal.Rptr. 461, 467– 68 (1986),[8] the magistrate noted " 'it is best to draw a clear and unequivocal line—opposing counsel should not have ex parte contacts concerning a subject of controversy with the employees of a corporate party to the controversy.' " Order on Plaintiffs' Motion to Compel, 3–4. Consequently, the magistrate in *Johnson* concluded that Rule 4.2 prohibited *all* ex parte contacts with current and former corporate employees. The magistrate's "blanket" order did provide, however, that informal interviews of current and former employees could be arranged with the participation and cooperation of outside counsel for the opposing

---

**6.** When Wyoming adopted the Model Rules, it also adopted the Official Comments to each rule. While the Official Comments are "intended as guides to interpretation" and to "explain and illustrate the meaning and purpose of the Rule," the "text of each Rule is authoritative." Wyo.R.Prof.Conduct "Scope" ¶ 9.

**7.** *See, e.g.,* Stephen M. Sinaiko, *Ex Parte Communication and the Corporate Adversary: A New Approach,* 66 N.Y.U.L.Rev. 1456 (1991); Samuel R. Miller and Angelo J. Calfo, *Ex Parte Contact With Employees and Former Employees of a Corporate Adversary: Is It Ethical?,* 42 Bus.Law. 1053 (1987); Louis A. Stahl, *Ex Parte Interviews With Enterprise Employees: A Post–Upjohn*

*Analysis,* 44 Wash. & Lee L.Rev. 1181 (1987); John Leubsdorf, Essay, *Communicating With Another Lawyer's Client: The Lawyer's Veto And The Client's Interests,* 127 U.Pa.L.Rev. 683 (1979).

**8.** *Mills Land and Water Co.,* 230 Cal.Rptr. 461 is discussed at length in Miller & Calfo, *supra n. 7,* 42 Bus.Law. at 1060–67. Actually, the case has no factual relevance in analysis of any particular rule since the contact in the case occurred with a corporate *director,* which would within any concept be in violation of the ethical rule. *See also Cronin v. Eighth Judicial Dist. Court In and For County of Clark,* 105 Nev. 635, 781 P.2d 1150 (1989).

party.[9]

The Strawsers countered the Exxon motion by arguing that counsel had at all times conducted themselves in accordance with the purposes of Rule 4.2. They maintained that the two Exxon employees referred to by Exxon as having "managerial responsibility" were, instead, merely "supervisors" since the two had not had immediate or direct managerial control over Strawser. Within this factual scenario, the Strawsers asserted that the district court should adopt the "managerial-speaking test" in *Wright by Wright v. Group Health Hosp.*, 103 Wash.2d 192, 691 P.2d 564 (1984) in order to identify those Exxon employees that counsel should be entitled to interview ex parte. *See also Fulton v. Lane*, 829 P.2d 959 (Okl.1992).

As is obvious from the recitation of the district court's protective order, the court did not cite any legal authority to support its conclusion prohibiting ex parte interviews with all present and former Exxon employees. The district court also failed to provide supporting authority for requiring the Strawsers to produce all documents, statements, tapes and notes from previously conducted interviews. It would appear from the result that the district court actually embraced Exxon's "bright line" argument for a "blanket" prohibition on all ex parte interviews of corporate employees by opposing litigants or their counsel. We do not find persuasive justification for this court's adoption of that extreme rule, which actually finds little case law support. *Cf. Fulton*, 829 P.2d at 960.

The Strawsers and Exxon essentially adopt the same arguments that were made to the district court below and we are favored in the present stage of this proceeding with comprehensive briefing and oral argument. The Strawsers contend that their ex parte interviews did not breach the ethical duty imposed by Rule 4.2 since statements made by those employees interviewed do not constitute admissions pursuant to W.R.E. 801(d)(2)(D). The Strawsers also insist that, under *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), attorney-client privilege only protects *communications*—and not underlying *facts*. Thus, they maintain that their interviews did not violate Rule 4.2 since the scope of the ethical rule differs significantly from that of the privileged communication rule. As before, the Strawsers again suggest that the appropriate "test" for Wyoming's Rule 4.2 of the Rules of Professional Conduct is the "managerial-speaking test" found in *Wright by Wright*, 691 P.2d 564.

Arguing in support of the district court's protective order, Exxon identifies three primary reasons why all ex parte interviews should be prohibited in this case: (1) at least two of the Strawsers' interviews were with managers in direct violation of Rule 4.2; (2) it is likely that some of the Exxon employees interviewed could "bind" Exxon; and (3) opposing counsels' "willingness" to probe into privileged matters. Citing (among other cases) *Public Service Elec. and Gas Co. v. Associated Elec. & Gas Ins. Services, Ltd. (AEGIS)*, 745 F.Supp. 1037 (D.N.J.1990),[10] Exxon asserts that the district court was justified in imposing a

---

**9.** The case frequently cited in support of the blanket rule, *Hewlett–Packard Co. v. Superior Court (Jensen)*, 205 Cal.App.3d 43, 252 Cal.Rptr. 14 (1988), was ordered *not* to be officially published by the California Supreme Court, pursuant to Cal.Rules of Court, Rule 976. Subsequent support for that approach within California cases is not demonstrable from citation provided by the litigants or found in our independent review. *See, e.g., Triple A Mach. Shop, Inc. v. State*, 213 Cal.App.3d 131, 261 Cal.Rptr. 493 (1989). *See also*, although involving ex-employees, *Nalian Truck Lines, Inc. v. Nakano Warehouse & Transp. Corp.*, 6 Cal.App.4th 1256, 8 Cal.Rptr.2d 467 (1992). It should be noted that under California Rules of Court, an opinion that

is ordered not published shall not, with limited exceptions, be cited or relied upon in that jurisdiction as authority. *See* Cal.Rules of Court, Rule 977.

**10.** The reasoning and result in *Public Service Elec. and Gas Co.* has generally been disregarded by most other courts—including those within its own district. *See Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77, 82 (D.N.J.1991); *see also Hanntz v. Shiley, Inc. A Div. of Pfizer, Inc.*, 766 F.Supp. 258 (D.N.J.1991); and *Shearson Lehman Bros., Inc. v. Wasatch Bank*, 139 F.R.D. 412 (D.Utah 1991).

complete "blanket" ban on ex parte contacts with Exxon's employees.[11]

In addition to the "blanket" and "managerial-speaking" tests submitted by the parties for consideration, different jurisdictions have adopted several other approaches to assist in identifying who is a "party" for Rule 4.2 purposes within the corporate context. For example, several federal courts have adopted a case-by-case "balancing" approach to determine whether good cause exists for entry of a protective order prohibiting opposing counsel from communicating with a corporate party's employees. *Mompoint v. Lotus Development Corp.*, 110 F.R.D. 414 (D.Mass. 1986); *see also Morrison v. Brandeis University*, 125 F.R.D. 14 (D.Mass.1989). "Courts applying the balancing test * * * look to the degree to which ex parte communication is needed to unearth relevant

information, the danger of generating evidentiary admissions against the corporation under Federal Rule of Evidence 801(d)(2)(D), and the degree to which 'effective representation of counsel' requires that the corporation's counsel be present at interviews." Stephen M. Sinaiko, *Ex Parte Communication and the Corporate Adversary: A New Approach*, 66 N.Y.U.L.Rev. 1456, 1489–90 (1991) (footnotes omitted).

A relatively small number of courts have employed a "control group" test. *See, e.g., Fair Automotive Repair, Inc. v. Car–X Service Systems, Inc.*, 128 Ill.App.3d 763, 84 Ill.Dec. 25, 471 N.E.2d 554 (1984). The "control group" approach essentially bans ex parte communications with only the most highly placed agents in an organization; the "control group" is defined as "those top management persons who had

---

**11.** In arguing against the "managerial-speaking test" adopted in *Wright by Wright*, 691 P.2d 564, and tendered by the Strawsers, we note that Exxon raises an interesting point:

> The test adopted in *Wright by Wright* is inconsistent with Wyoming substantive law and far too narrow to protect the important interests behind Wyoming Rule 4.2.[28]

> [28] Any argument at this point in favor of limiting the term "party" in Rule 4.2 to managing agents is academic. The issue is whether [the Strawsers] violated the standard in place at the time they conducted their interviews, namely Rule 4.2 as interpreted by a fair reading of the Official Comment. If, at the time [the Strawsers] began their investigation, they were unsure whether they were bound by the Comment to Rule 4.2 as opposed to the more narrow "managerial-speaking" test, they should have sought guidance from the district court. * * * Their argument for adoption of a new interpretation of the Rule comes far too late.

We find this aspect of Exxon's reasoning unrealistic. First, although there is nothing in the language in the district court's protective order—nor, for that matter, anywhere else in the record—to indicate that the district court *actually found* a violation of Rule 4.2, Exxon premises its defense of the "blanket" prohibition of ex parte contacts on that "finding." We recognize no basis from either this record of within the significant body of relevant case law for summarily concluding that a "blanket" prohibition of ex parte interviews was necessarily imposed *because* the district concluded the ethics rule had been violated. With the possible exception of the protective order requirement that the Strawsers produce all documents, statements,

tapes and notes, the order might just as easily have been imposed prospectively in order to *avoid* an ethical violation.

Second, Exxon's suggestion that a "fair reading" of the Official Comment to Rule 4.2 would have informed the Strawsers and their counsel of their limited options for informal discovery belies the substantial body of case law and commentary to the contrary. *See, e.g.,* Sinaiko, *supra n. 7*, 66 N.Y.U.L.Rev. 1456 (identifying and critiquing four different "tests" for applying Rule 4.2 or its Disciplinary Code counterpart, DR 7–104(A)(1) and, in addition, proposing an entirely new and "improved" approach); Jerome N. Krulewitch, Comment, *Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest*, 82 N.W.U.L.Rev. 1274 (1988) (identifying and critiquing four separate Rule 4.2 approaches in addition to the "blanket" approach in the present case); John D. Hodson, Annotation, *Right of Attorney to Conduct Ex Parte Interviews with Corporate Party's Nonmanagement Employees*, 50 A.L.R.4th 652 (1986 & Supp.1992) (identifying four separate categories of Rule 4.2 "tests" other than the "blanket" ex parte contact prohibition).

Finally, Exxon's argument that it is "too late" for this court to adopt a "new interpretation" of Rule 4.2 is unacceptable. *Only* the Wyoming Supreme Court can adopt the type of interpretive "test" which is needed in this case. Since this is a case of first impression in this state and no other Rule 4.2 "test" has been previously adopted, we will apply our supervisory responsibility in de novo review to make that decision and establish the appropriate rule for the practice of law by Wyoming lawyers and the trial bench.

the responsibility of making final decisions and those employees whose advisory roles to top management are such that a decision would not normally be made without those persons' advice or opinion or whose opinions in fact form the basis of any final decision." *Id.* 84 Ill.Dec. at 31, 471 N.E.2d at 560.

Finally, other courts have adopted what has variously been referred to as the "alter ego" or "binding admission" test. *See* Sinaiko, *supra,* 66 N.Y.U.L.Rev. at 1484–87; Hodson, Annotation, *supra,* 50 A.L.R.4th at 14 (Supp.1992). In *Niesig v. Team I,* 559 N.Y.S.2d at 498, 558 N.E.2d at 1035 (emphasis added), the court stated:

> The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines "party" to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's "alter egos") or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. *All other employees may be interviewed informally.*

*See also Frey v. Department of Health and Human Services,* 106 F.R.D. 32 (E.D.N.Y.1985); and *State v. CIBA–GEIGY Corp.,* 247 N.J.Super. 314, 589 A.2d 180 (1991).

In *Niesig,* the court applied a variation of the "managerial-speaking" test found in *Wright by Wright,* 691 P.2d 564. *Niesig,* 559 N.Y.S.2d at 499, 558 N.E.2d at 1036. Further, the *Niesig* majority disclaimed any reliance on the official commentary to Rule 4.2 even though the dispositive result resembles what is suggested by the commentary to the rule. *Id.* at 499, 558 N.E.2d at 1036 n. 6.

Research indicates that application of the *Niesig* "alter ego" or "binding admission" test to answer Rule 4.2 questions in the corporate setting seems to be gaining support across the country. *See, e.g., Dent v. Kaufman,* 185 W.Va. 171, 406 S.E.2d 68 (1991). In *Dent,* the West Virginia Supreme Court applied the *Niesig* test and found that the protective order issued by the circuit court was "far too broad." *Id.* 406 S.E.2d at 73. The appellate court concluded that the lower court misapplied Rule 4.2. In issuing a writ of prohibition, the appellate court concluded that the lower court had a choice of narrowing its order to conform with the *Niesig*/"alter ego" approach or, in the alternative, abandoning its order altogether. *Id.*

After a careful review of the record and analysis of the various Rule 4.2 "tests," we find the pragmatic legal reasoning in the *Niesig*/"alter ego" or "binding admission" approach to be persuasive. We hold that the Strawsers and their counsel are entitled to conduct informal ex parte interviews with all present Exxon employees except: (1) those who may legally bind Exxon by their having acted or failed to act in the alleged course of defaming Strawser or invading the Strawsers' privacy; (2) those whose actual conduct in the claimed incident(s) may be imputed to Exxon; and (3) those employees implementing the advice of Exxon's counsel. With this result, we agree with what the West Virginia Supreme Court said in *Dent,* 406 S.E.2d at 72:

> It is important to remember that what we are dealing with here are rules of professional conduct, not rules of evidence. As the Supreme Court of Washington has said, "[i]t is not the purpose of the rule [DR 7–104(A)(1) ] to protect a corporate party from the revelation of prejudicial facts." *Wright v. Group Health Hosp.,* 103 Wash.2d 192, 200, 691 P.2d 564, 569 [1984].

*Niesig* specifies the operational standard:

> In practical application, the test we adopt thus would prohibit direct communication by adversary counsel "with those officials, but only those, who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are directly at stake in a representation."
> * * *
> This test would permit direct access to all other employees, and specifically—as in the present case—it would clearly per-

mit direct access to employees who were merely witnesses to an event for which the corporate employer is sued.

*Niesig,* 559 N.Y.S.2d at 498–99, 558 N.E.2d at 1035–36 (quoting Wolfram, *Modern Legal Ethics* § 11.6, at 613 (Practitioner's ed. 1986)).[12]

We hold that the district court applied the wrong legal standard when it prohibited *all* interviews with Exxon's employees. We vacate the applicable portion of the protective order and remand the remainder of the protective order to the district court for modification in light of this opinion. With regard to current Exxon employees who may be interviewed ex parte in the future by opposing counsel, the *Niesig* "alter ego" or "binding admission" test will be applied by the litigants and the court. *Bouge' v. Smith's Management Corp.,* 132 F.R.D. 560 (D.Utah 1990).

### D. *Standard for Former Employees*

■ Various courts have struggled with the question of whether Rule 4.2 applies to former corporate employees. *See, e.g., Action Air Freight, Inc.,* 769 F.Supp. at 903; and *Hanntz v. Shiley, Inc. A Div. of Pfizer, Inc.,* 766 F.Supp. 258, 265–69 (D.N.J. 1991). It is clear, however, that the overwhelming recent trend has been for courts to find that Rule 4.2 does not generally bar ex parte contacts with former employees. As noted in *Action Air Freight, Inc.,* 769 F.Supp. at 903:

> [Rule 4.2] permits *ex parte* contacts but proscribes inquiry by opposing counsel into matters subject to the attorney-client privilege. The qualification on the "contact rule" allows opposing counsel to investigate the underlying facts leading up to the disputed matter. At the same time, counsel must for[e]go inquiry into attorney-client communications during

the contact. Accordingly, *Hanntz* interprets Rule 4.2 to proscribe the type of questioning of former employees, not the contact itself.

*See Valassis v. Samelson,* 143 F.R.D. 118 (E.D.Mich.1992); *Dubois v. Gradco Systems, Inc.,* 136 F.R.D. 341 (D.Conn.1991); *In re Domestic Air Transp. Antitrust Litigation,* 141 F.R.D. 556 (N.D.Ga.1992); *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77 (D.N.J.1991); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621 (S.D.N.Y.1990); *Shearson Lehman Bros., Inc. v. Wasatch Bank,* 139 F.R.D. 412 (D.Utah 1991); *Lang v. Superior Court, In and For County of Maricopa,* 170 Ariz. 602, 826 P.2d 1228 (1992); *Neil S. Sullivan Associates, Ltd. v. Medco Containment Services, Inc.,* 257 N.J.Super. 155, 607 A.2d 1386 (1992) (counsel must abide by Rule 4.3 guidelines—must disclose role in litigation and can not elicit any privileged information); and *In re Environmental Ins. Declaratory Judgment Actions,* 600 A.2d 165.

Although the exact status of any former Exxon employees who may have been interviewed by the Strawsers or their counsel is not particularly clear from the record, we remand to the district court to vacate that portion of the protective order prohibiting *all* ex parte interviews with former Exxon employees and managers.

### IV. CONCLUSIONS AND RESOLUTIONS

The standards establishing the right to interview, or absence thereof, provided by the alter ego/binding admission test, should appropriately control the exercise of future discretion by the district court regarding requirement of counsel for the

---

12. It is important to also recognize the cautionary note provided in *Niesig,* 559 N.Y.S.2d at 499, 558 N.E.2d at 1036:

> Defendant's assertions that ex parte interviews should not be permitted because of the dangers of overreaching, moreover, impel us to add the cautionary note that, while we have

not been called upon to consider questions relating to the actual conduct of such interviews, it is of course assumed that attorneys would make their identify and interest known to interviewees and comport themselves ethically.

Strawsers to produce any or all of the documentation included within the May 16, 1991 protective order. The challenged protective order is reversed and this litigation is remanded for further proceedings in conformity herewith.