**Brad SKINNER, on his own behalf and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**Judith UPHOFF; Vance Everett; James Hewitt; David Ebell; all in their individual and official capacities, Robert Ortega and Scott Abbott, in their official capacities, Defendants.**

No. 02–CV–033B.

United States District Court,
D. Wyoming.

Jan. 20, 2006.

Shirley Kingston, Laramie, Stephen L Pevar, American Civil Liberties Union, Hartford, CT, Timothy C Kingston, Graves Miller & Kingston, Cheyenne, for Plaintiffs.

Patrick J. Crank, Wyoming Attorney General, John W Renneisen, Wyoming Attorney General, David Delicath, Wyoming Attorney General, Steven Richard Czoschke, Wyoming Attorney General, Dan Fetsco, Wyoming Attorney General, Cheyenne, for Defendants.

## SECOND ORDER ON VARIOUS MOTIONS

BRIMMER, District Judge.

This matter is before the Court on (1) Plaintiffs' Motion to Alter or Amend; (2) Defendants' Motion for Relief from Order; (3) Plaintiffs' Motion for Declaratory Judgment Re: Plaintiffs' Right to Communicate with the Outside Investigator; (4) Plaintiffs' Motion for Declaratory and Injunctive Relief; (5) Plaintiffs' Motion for Leave to Engage in Formal Discovery; and (6) Defendants' Motion for Termination of Final Decree and Prospective Relief. After considering the motions, having reviewed the materials on file, hav-

ing heard oral argument and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

## BACKGROUND

Plaintiff Skinner originally filed this suit on February 15, 2002, asserting claims individually and on behalf of other similarly situated individuals. Individually, he sought compensatory and punitive damages pursuant to 42 U.S.C. § 1983, for violations of his Eighth and Fourteenth amendment rights. The Plaintiff also sought injunctive relief preventing the Defendants from failing to take all necessary and proper steps to safeguard him and other Wyoming State Penitentiary (WSP) inmates from unprovoked assaults by other inmates.[1]

On November 27, 2002, this Court granted injunctive relief and declaratory relief on the Plaintiffs' class action claim.[2] *Skinner v. Uphoff,* 234 F.Supp.2d 1208, 1210–12 (D.Wyo.2002) (finding that Defendants failed to adequately train and supervise employees, failed to properly review policy violations, failed to properly discipline employees, all of which led to risks to inmate safety). In an effort to alleviate the problems at the WSP, a Remedial Plan was adopted and approved by this Court.

As part of the Remedial Plan, the Defendants were required to periodically provide certain documents and information to the Joint Expert and Plaintiffs' counsel. Because some of these documents contained information considered to be confidential pursuant to the Wyoming Public Records Act, Wyo. Stat. Ann. §§ 16–4–200 through 16–4–205, the State Self Insurance Act, Wyo. Stat. Ann. §§ 1–41–101 through 1–41–110, and the Wyoming Criminal History Record Act, Wyo. Stat. Ann. §§ 7–19–101 through 7–19–602, and other state and federal confidentiality laws, this Court promulgated a protective order (July 15, 2003, Order for Protection of Documents) to prevent the dissemination of confidential information.

This Court subsequently formulated a system to govern the production and dissemination of documents provided by the Defendants to the Plaintiffs' counsel. (September 27, 2005, Order on Various Motions 10) Accordingly, the Defendants are required to redact all confidential and privileged information from documents which Plaintiffs' counsel is entitled to review or receive. After the redacted materials are provided to Plaintiffs' counsel, he is allowed to distribute and disseminate them as he deems fit. *Id.*

Another portion of the Remedial Plan, Policy 1.012, provided a procedure for the investigation of suspected cases of inmate on inmate assaults. This procedure called for the hiring of a professional investigator within the Wyoming Department of Corrections (WDOC) and for the utilization of an outside investigator when assaults appear to be premeditated. The Remedial Plan also established time lines for investigating incidents at the prison and for completing reports on such investigations.

Both parties agree that under the Remedial Plan the Defendants have improved prison conditions. However, both parties now contend that modifications to the Remedial Plan and to this Court's September 27, 2005, Order on Various Motions are necessary. Specifically, in five separate motions, the parties have asked the Court to review and make modifications in its September 27, 2005, order, for other declaratory relief and for discovery. Additionally, the Defendants have filed a Mo-

---

1. For a complete recitation of the facts precipitating this lawsuit, see *Skinner v. Uphoff,* 234 F.Supp.2d 1208, 1210–12 (D.Wyo.2002).

2. The parties eventually reached a settlement regarding Skinner's individual claims.

tion for Termination of Final Decree and Prospective Relief.

## DISCUSSION

There are currently six motions pending before the Court. They are (1) Plaintiffs' Motion to Alter or Amend; (2) Defendants' Motion for Relief from Order; (3) Plaintiffs' Motion for Declaratory Judgment re: Plaintiffs' Right to Communicate with the Outside Investigator; (4) Plaintiffs' Motion for Declaratory and Injunctive Relief; (5)Plaintiffs' Motion for Leave to Engage in Formal Discovery; and (6) Defendants' Motion for Termination of Final Decree and Prospective Relief. The Court will address these motions, in turn, below.

## I. Plaintiffs' Motion to Alter or Amend

As explained in the preceding section, the Remedial Plan requires the Defendants to provide all investigation reports and some supporting documentation to the Plaintiffs. The Court issued a protective order so that confidential information contained in the documents is not disseminated. Subsequently, the Court provided a mechanism by which the Defendants may redact the confidential information contained in the documents and then the Plaintiffs' counsel may disseminate the redacted documents to the Plaintiffs, their relatives, the media and the public at large. Order on Various Motions, 9–10, filed September 27, 2005.

The Plaintiffs now seek a declaration that the Defendants have a legal duty, separate and apart from this litigation, to make investigative reports available to inmates, the public and the media. The Plaintiffs argue that, in the long term, when the Remedial Plan is no longer in effect, the right of the inmates and the public to examine investigative reports will not be terminated, and thus, the Defendants must be required to provide them. The Plaintiffs also argue that, in the short term, it is the Defendants' duty to make

reports available, not Plaintiffs' counsel. At oral argument of the matter, the Plaintiffs proposed the following language be added to the Court's earlier Order on Various Motions:

> In order to ensure that inmates and members of the public may exercise their right to read Defendants' redacted investigative reports, the Defendants must make copies of those reports available to them at reasonable cost. Indigent inmates must be allowed by the Defendants to read these reports without charge, subject to such reasonable restrictions on time, place, and manner as the Defendants may impose.

The Defendants have taken the position that this language is not required and that no amendment to the Court's earlier order is necessary. Rather, the Defendants argue that there is no legal authority for the Plaintiffs' position; that requiring the Defendants to disseminate copies of reports any time anyone requests it would place an undue burden on the Defendants; and that the question is not ripe because the issue of Plaintiffs' right to obtain and disseminate redacted documents has already been resolved.

The Court has resolved the question of accessibility during this litigation and the pendency of the Remedial Plan. *See* September 27, 2005 Order on Various Motions at 9–10. The Court agrees with the Plaintiffs that, during the pendency of the Remedial Plan, the Defendants, and not the Plaintiffs' attorney, ought to bear the burden of producing documents to the media and public at large, when requested to do so by the media and the public. Therefore, the Court hereby amends its earlier Order on Various Motions to contain the following:

> While the Remedial Plan is in effect, the Defendants have the responsibility for making redacted versions of investiga-

tive reports available to the public and the media, when requested by those parties. Defendants may charge a reasonable fee to cover copying and production costs.

However, as is the practice in any litigation, it is the duty of the Plaintiffs' counsel to provide redacted documents to the Plaintiffs and their families, as he has done through this date.

The Court now turns to the Plaintiffs' request that the Court address production of reports after the Remedial Plan is no longer in effect. This Court has stressed the importance of the ongoing role of the inmates and the public in monitoring the prison conditions in Wyoming. Regular review of investigative reports is one way in which the inmates and the public can act as a check to insure that the great strides made under the Remedial Plan continue to hold after the Remedial Plan is long gone. And, for this reason, the Court feels strongly that redacted investigative reports ought to be accessible, even after the end of this litigation.

■ However, the question of accessibility of documents after the termination of the Remedial Plan cannot and should not be addressed by the Court at this time. The Remedial Plan has not been terminated. And, to this Court's knowledge, no inmate, member of the public or media has requested copies of any investigative reports from the Defendants. Similarly, no inmate, member of the public or media has been denied access to these documents. Thus, this issue is simply not ripe for adjudication. Moreover, the Prison Litigation Reform Act (PLRA) requires that the prospective relief granted by the courts "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). The PLRA goes on to state that:

The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

There are mechanisms contained in the Wyoming statutes which address the state's duty to produce documents to the public and which provide a framework for obtaining documents. *See* Wyoming Public Records Act, Wyo. Stat. Ann. §§ 16–4–201, et seq. These mechanisms may well be adequate in the future, once the Remedial Plan has been terminated. If not, the aggrieved parties seeking to obtain documents may proceed through the normal channels of appeal to the courts and assert their rights at that time.

## II. Defendants' Motion for Relief from Order

The Defendants are seeking to modify the portion of the Court's September 27, 2005, Order on Various Motions to the extent that the Order places an affirmative duty on the Defendants to redact documents, but places no duty on Plaintiffs' attorney to carefully scrutinize the documents for confidential material before disseminating them to his clients. Defendants apparently take issue with this language because, they claim, "the Court has unnecessarily offered an opinion on what duty might or might not be imposed on Defendants under state tort law." Defendants' Motion for Relief from Order at 3.

■ Contrary to the Defendants' claims, this Court is not asserting any "opinion" as to state tort law. Rather, quite necessarily, the Court has required that somebody redact the documents which will be made available to the Plaintiffs, the public and the media. Because those documents are

in the custody of the Defendants and because the Department of Corrections is the very agency which is responsible for the safety of prison inmates, it only makes sense that the Defendants bear the responsibility of redacting documents. The Court is quite sure that, if the Plaintiffs' counsel finds an error in Defendants' redaction, he will alert the Defendants and not disseminate the document. However, the responsibility for redacting does not lie with the Plaintiffs' attorney. Therefore, the Court will deny the Defendants' motion.

### III. Plaintiffs' Motion for Declaratory Judgment re: Plaintiffs' Right to Communicate with the Outside Investigator

As explained above, the Remedial Plan requires that suspected premeditated inmate on inmate assaults be investigated by an Outside Investigator who is an independent contractor with the Wyoming Department of Corrections (WDOC). Remedial Plan 4, ¶ 5. Once the Outside Investigator completes a report, he then submits it to the WDOC. Policy 1.012 (incorporated in the Remedial Plan). A copy of the report is then forwarded by Defendants' counsel to the Joint Expert and to Plaintiffs' counsel. Remedial Plan 17, ¶ 2.

The Plaintiffs have requested that the Court issue declaratory relief that the Plaintiffs have a right to ask the Outside Investigator questions concerning his investigations.

The Defendants claim that because the Outside Investigator must act independently of both parties, he must be free from constant queries and requests which could amount to pressure concerning his findings from the parties. Defendants thus take the position that neither the Plaintiffs nor the Defendants should be permitted to question the Outside Investigator regarding his investigations.

Both parties rely upon the *Strawser v. Exxon*, 843 P.2d 613 (Wyo.1992), decision to support their positions. In *Strawser*, the Wyoming Supreme Court held that litigants may engage in ex parte communications with employees of a defendant corporation unless (1) the employee is in a managerial position; or (2) the employee's statements could bind the corporation; or (3) privileged information was sought. The Plaintiffs claim that because the Outside Investigator does not fall within any of the three excluded categories, they are entitled to question him. The Defendants take the position that because the Outside Investigator is an independent contractor who is not an employee or a victim or witness, the *Strawser* case does not apply.

The facts that the Outside Investigator is not an employee, that he is an independent contractor and that he is hired by the state to conduct independent investigations do not provide him with insulation from questioning under *Strawser*. Conclusions made by the Outside Investigator in his reports bear directly upon whether the Defendants are complying with the Remedial Plan and, ultimately, whether the ongoing violations of the Plaintiffs' rights have been cured. Therefore, it appears to the Court that both parties must have the ability to question the Outside Investigator with respect to the findings and conclusions that are contained in his reports. There has been no evidence submitted to the Court which would indicate that the Outside Investigator would be unduly pressured by legitimate questions asked by either party.

Therefore, the Court holds that both the Plaintiffs and Defendants ought to have the opportunity to ask the Outside Investigator questions regarding his reports, provided that those questions are legitimate and not frivolous or harassing. Any party desiring to question the Outside Investiga-

tor must provide a copy of questions propounded to the opposing party. The Outside Investigator has the right to refuse to answer any questions and, if he chooses to answer questions, must provide answers to both the Plaintiffs and the Defendants.

## IV. Plaintiffs' Motion for Declaratory and Injunctive Relief

Next, the Plaintiffs have requested declaratory and injunctive relief enjoining the Defendants from unnecessarily delaying abatement of staff error, misconduct and other institutional deficiencies discovered during investigations of inmate on inmate assaults. In their motion, the Plaintiffs raise two issues. First, they contend that the addition of a new step in the abatement process has caused too many delays. Second, they claim that the Defendants are misinterpreting § I–E–8 of the Remedial Plan, which sets forth a deadline for the Warden to take personnel action when disciplinary action is recommended. The Court addresses both issues below.

In the past, when an investigation uncovered staff error, misconduct or other institutional deficiency, the Warden would devise a remedy to abate the deficiency and then would send his plan to the Director of the WDOC, who also acted to review the plan and make a final determination. Under this scenario, according to the Plaintiffs, deficiencies were promptly abated. The Defendants have added a new step in the process and, now, when the Warden receives a recommendation by an investigator regarding staff error, misconduct or other deficiency, he assigns subordinates to review the investigator's recommendations and submit a proposed solution to him. The warden then examines the proposal and sends a recommendation on to the Director.

The Plaintiffs agree that the addition of this step is not, in and of itself, objectiona-

ble. In fact, they agree that it is laudable to draw mid-level management into the abatement process. Their problem with the new procedure is, simply, that it has unnecessarily added too much time to the abatement process.

The Plaintiffs also raise a related issue, claiming that the Defendants are not complying with Section I–E–8 of the Remedial Plan. That section provides, in pertinent part, "Whenever any person having authority to recommend disciplinary action, recommends that a staff member be disciplined ... the Warden must within 14 days ... initiate a personnel action."

The underlying question before the Court is whether it should grant injunctive and declaratory relief regarding the timing of the Defendants' actions in abating defects. The Remedial Plan contains an implicit requirement that the Defendants must take corrective actions promptly to abate deficiencies at the prison. *See, e.g.,* Policy 1.012 (incorporated into the Remedial Plan and setting forth procedures and a timeline for investigation of inmate on inmate assaults); Remedial Plan § I–D (describing the General Incident Tracking Log); Remedial Plan § I–E (describing staff disciplinary procedures). Failure to do so only perpetuates the dangerous conditions that led to the filing of this lawsuit in the first place.

There is evidence before the Court that in some instances the Defendants have waited months before taking any abatement actions. *See* Plaintiffs' Motion for Declaratory and Injunctive Relief, exh. 1 at 2, filed under seal. There is also evidence before the Court that the Defendants have taken a number of corrective actions to address problems at the WSP. From October 2003 through November of 2005, the WDOC has taken one hundred fifty (150) actions regarding one hundred twenty (120) different staff members. *See*

Defendants' Response to Motion for Declaratory and Injunctive Relief re: Defendants' Corrective Actions, exh. E, filed under seal.[3]

The Court is aware of the fact that the time needed for the implementation of different abatement actions varies depending on the nature of the action required. Therefore, the Court is reluctant to impose any deadlines that do not already exist in the Remedial Plan or the Court's subsequent orders. Nonetheless, the Court recognizes that unnecessary delay in the implementation of important corrective actions could increase the risk of injury to inmates at the WSP. As a result, the Defendants must comply with the deadlines contained in the Remedial Plan, the documents incorporated in the plan, and this Court's subsequent orders modifying the plan.[4] Those deadlines include the fourteen (14) day deadline contained in section I–E–8 of the Remedial Plan. If the Defendants find that they need additional time in any particular instance, they can notify the Plaintiffs' counsel that they need an extension, the reasons therefore and the amount of additional time needed. If Plaintiffs' counsel does not object, the extension will be deemed necessary and granted. If Plaintiffs' counsel does object and the parties cannot reach an agreement regarding the extension, the Plaintiffs can file an objection with the Court, which will then rule on the merits of the objection.

## V. Plaintiffs' Motion for Leave to Engage in Formal Discovery

The Plaintiffs have requested that the Court grant them leave to engage in formal discovery by way of interrogatories in order to fully understand and monitor the Defendants' compliance with the Remedial Plan. The Defendants do not generally object to the Plaintiffs engaging in formal discovery. Rather, they take the position that the Plaintiffs must be limited in the scope and number of interrogatories that they may serve, in accordance with the Local Rules of this Court. U.S.D.C.L.R. 33(a)(limiting interrogatories to twenty five (25)).

■ In light of the fact that the Defendants have filed their Motion for Termination of Final Decree and Prospective Relief and, due to the numerous number of incidents involved in this matter, this Court finds that there is good cause for the Plaintiffs to exceed the twenty-five interrogatory limit contained in U.S.D.C.L.R. 33(a).

The Plaintiffs may pose as many interrogatories as necessary, so long as those interrogatories are relevant, pertinent and not frivolous or harassing. Of course, the Defendants may object to any discovery propounded by the Plaintiffs in accordance with the Local Rules and/or the Federal Rules of Civil Procedure.

## VI. Defendants' Motion for Termination of Final Decree and Prospective Relief

The Defendants filed their Motion for Termination of Final Decree and Prospective Relief on January 3, 2006. Because it has been more than two years since the Final Decree was entered by the Court on October 7, 2003, the Defendants are entitled to seek this relief under section 3626(b)(1)(A)(i) of the PLRA. 18 U.S.C.

---

**3.** Those actions included counseling about a staff error one hundred five (105) times, twelve (12) written reprimands, five (5) temporary suspensions, one (1) reduction in rank, five (5) involuntary terminations, and nine (9) references for remedial training.

**4.** The Court also notes that in its September 27, 2005, Order on Various Motions, 19–20, it provided a mechanism by which the Defendants can acquire additional time if they cannot meet a particular deadline.

§ 3626(b)(1)(A)(i). Section 3626(b)(2) of the PLRA requires this Court to determine, based on the record, whether there is a "current and ongoing violation of the Federal right."

In the case of *Ginest v. Board of County Commissioners of Carbon County*, 295 F.Supp.2d 1274, 1276 (D.Wyo.2004), this Court took the position that "[b]ecause the PLRA directs a district court to look to current conditions, and because the existing record at the time the motion for termination is filed will often be inadequate for purposes of this determination, the party opposing termination must be given the opportunity to submit additional evidence in an effort to show current and ongoing constitutional violations." (citations omitted)

█ The situation is the same here. The Court finds that the Plaintiffs must be allowed the opportunity for discovery and then both parties must present evidence of the existence or non-existence of ongoing violations so that this Court may issue a ruling on the Defendants' motion. As this Court ruled at the January 5, 2006, oral argument, the discovery cutoff date will be ninety days from the date of oral argument, or March 29, 2006. After that time, the Plaintiffs will have twenty days, until April 18, 2006, in which to brief their position, and the Defendants will have ten days, until April 28, 2006, in which to respond. The Court will then hear the matter on May 31, 2006, at 9:00 a.m.

Finally, the PLRA provides that, once a motion for termination is filed, there is an automatic stay which takes effect beginning the thirtieth (30th) day after the motion is filed. 18 U.S.C. § 3626(e)(2)(A)(i). The PLRA also provides that the "court may postpone the effective date of an automatic stay ... for not more than 60 days for good cause." 18 U.S.C. § 3626(e)(3).

█ While the Court has recognized that the Defendants have come a long way in remediating the conditions that exist at the WSP, the Court is aware of violations alleged to be in existence at this time. The Plaintiffs have made allegations concerning ongoing inmate on inmate violence, delays in the Defendants' remedial actions, and concerns raised by the Joint Expert. *See, e.g.,* Plaintiffs' Motion to Alter or Amend; Plaintiffs' Motion for Declaratory Judgment re: Plaintiffs' Right to Communicate with the Outside Investigator; Plaintiff's Motion for Declaratory and Injunctive; and Plaintiffs' Motion for Leave to Engage in Formal Discovery. Based upon these allegations and the need to ensure that the Defendants continue to address conditions at the WSP, this Court finds that there is good cause to postpone the effective date of the automatic stay and therefore orders that the automatic stay be postponed 60 days, as provided under section 3626(e)(3).

**WHEREFORE**, Plaintiffs' Motion to Alter or Amend is **GRANTED**, in part, and **DENIED**, in part; Defendants' Motion for Relief from Order is **DENIED**; Plaintiffs' Motion for Declaratory Judgment re: Plaintiffs' Right to Communicate with the Outside Investigator is **GRANTED**; Plaintiff's Motion for Declaratory and Injunctive Relief is **DENIED** in part and **GRANTED** in part; Plaintiffs' Motion for Leave to Engage in Formal Discovery is **GRANTED**; Defendants' Motion for Termination of Final Decree and Prospective Relief is **DEFERRED**, pending discovery and the evidentiary hearing to be held on May 31, 2006, at 9:30 a.m.