826 P.2d 1228

Agnes Barbara LANG, an
individual, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY Of MARICOPA, Honorable Marilyn A. Riddel, Acting as Judge Thereof, Respondent Judge,

EAST VALLEY JEEP/EAGLE, INC.,
et al., Real Parties in Interest.

No. 1 CA–SA 91–251.

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 27, 1992.

Cheifetz, Pierce, Cochran, Kozak & Mathew, P.C. by Steven W. Cheifetz and Claudio E. Iannitelli, Phoenix, for petitioner.

Holloway, Odegard & Sweeney, P.C. by Paul W. Holloway and Kevin B. Sweeney, Phoenix, for real party in interest.

## OPINION

CLABORNE, Judge.

■ Can a lawyer have *ex parte* contact with a former employee of an opposing party when the former employer is represented by counsel? This is the ultimate question for us to answer. The trial court concluded such contact violates Ariz.Sup. Ct. Rule 42, Rules of Professional Conduct, Rule 4.2 ("ER 4.2").[1] The trial court struck the affidavits of two former East

Valley Jeep/Eagle ("East Valley") employees supplied by petitioner, refused to allow petitioner to call the affiants at trial, and ordered petitioner's counsel not to have any contact with East Valley's current or former employees. The trial court also granted East Valley's motion to quash subpoenas.

Petitioner, Agnes Lang, filed this special action challenging the trial court's orders. We previously accepted jurisdiction and directed the trial court to (1) vacate its order striking the affidavits, preventing Lang from introducing the testimony of the affiants at trial and also preventing Lang from having *ex parte* contacts with former employees of East Valley; and (2) to vacate its order which granted East Valley's motion to quash subpoenas. We dissolved the stay of proceedings previously entered by this court and indicated that our written decision would follow. This is that decision.

## BACKGROUND

Lang filed suit against East Valley alleging consumer fraud, civil racketeering, common law fraud and negligent misrepresentation. The action arose out of the purchase of a used automobile in July 1989, from East Valley. Lang allegedly had difficulty with the vehicle shortly after the purchase. She returned the vehicle to East Valley and demanded the return of her down payment. Not satisfied with East Valley's response, Lang filed suit seeking compensatory, special, and punitive damages.

East Valley moved for partial summary judgment on the claims of consumer fraud, common law fraud and civil racketeering and on the claim for punitive damages. Lang responded and included affidavits of Michael Viruso ("Viruso") and Robert Benn ("Benn"). Both Viruso and Benn are former employees of East Valley. Viruso worked as East Valley's finance director and general sales manager from March

---

**1.** We recognize that the ultimate responsibility for determining ethical conduct of a lawyer rests in the Arizona Supreme Court. However, in the context of determining the course of civil litigation, this court, as well as the trial court, may properly consider the propriety of lawyer conduct in fashioning discovery sanctions.

1989 until November 1989. Benn worked as East Valley's controller from August 1989 until January 1991.

East Valley moved to strike the affidavits contending they were obtained in violation of ER 4.2 and that Viruso's affidavit was unsigned. East Valley also moved for a protective order precluding Lang from contacting any present or former employee of East Valley. The record is clear that no permission to speak to any of the East Valley former employees was given by East Valley or its counsel.

The trial court granted the motion to strike and, as a sanction for violating ER 4.2, would not allow Lang to call Benn and Viruso as witnesses at trial. The trial court also prevented Lang from contacting any former or current employee of East Valley without East Valley's consent or proper notice.

East Valley also moved to quash subpoenas and for a comprehensive protective order. East Valley sought to prevent Lang from deposing William Koloseike, the president and sole director of East Valley; Mike Breyfogle, East Valley's sales manager; Gene Jones, a current salesperson at East Valley; and William Kester, an employee of General Motors Acceptance Corporation. East Valley argued that further discovery was unnecessary to resolve the dispute because none of the individuals had any involvement with the Lang transaction and because "extensive" and "extreme" discovery had already been completed by Lang. Lang argued that the testimony was relevant to meet the elements of her consumer fraud and racketeering claims and for punitive damages.

The trial court granted the motion to quash concluding that the information sought was irrelevant and ruled that the motion for a comprehensive protective order was moot.

## DISCUSSION

### 1. Jurisdiction

■ Before addressing the merits, we should explain our reasons for accepting

jurisdiction of this case. As a rule, special action relief is an inappropriate procedure for resolving discovery disputes. *U–Totem Store v. Walker*, 142 Ariz. 549, 551, 691 P.2d 315, 317 (App.1984). A direct appeal is considered an adequate post-trial remedy. *Id.*

■ There is no Arizona case law on the issue of *ex parte* contacts with former employees. Furthermore, our own ethics committee has been unable to reach a definitive conclusion on the issue. We, therefore, believe the issue is one of statewide importance, and, in the exercise of our discretion, have accepted special action jurisdiction.[2] *See Duquette v. Superior Court*, 161 Ariz. 269, 271, 778 P.2d 634, 636 (App. 1989).

### 2. *Ex Parte* Communications

■ The prohibition on *ex parte* contacts with a party known to be represented by counsel is set forth in ER 4.2:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The prohibition is intended to (1) prevent unprincipled attorneys from exploiting the disparity in legal skills between attorneys and lay people, (2) preserve the integrity of the attorney-client relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement. *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990).

The comment following the ER provides that, in the case of an organization, the rule prohibits communication with three groups of individuals: (1) those having a managerial responsibility on behalf of the organization; (2) any person whose act or

**2.** In the interest of judicial economy and because we believe the trial court abused its discretion, we also accept jurisdiction over the trial court's order which granted East Valley's motion to quash subpoenas.

omission in connection with the matter may be imputed to the organization; and (3) any person whose statement may constitute an admission on the part of the organization. Comment, ER 4.2. Categories one and three appear to contemplate some current connection with the organization. *See Polycast Technology*, 129 F.R.D. at 626; Arizona Committee on the Rules of Professional Conduct, Formal Op. No. 89–05, Alternative Op. (B) (May 17, 1989). Managerial employees may act for and/or bind the organization. Likewise, an employee's statement may constitute an admission on the part of the organization. Once these employees leave the organization, the relationship vanishes.

Category two, on the other hand, may be broad enough to include former employees. Our focus, then, is on whether the acts or omissions of a former employee may be imputed to the organization for purposes of liability. If so, the former employee is considered a party within the meaning of the rule, and *ex parte* contact is prohibited.

The parties take diametrically different positions. Lang wants a *per se* rule allowing *ex parte* contacts with any former employee if the employee no longer works for the organization. East Valley claims the best rule is a complete ban on *ex parte* contacts that deal with the subject matter of the litigation with all former employees. The claim is that the focus should be on whether the statements speak for or affect the organization's interest in the litigation.

In *Public Serv. Elec. & Gas v. Assoc. Elec. & Gas*, 745 F.Supp. 1037 (D.N.J.1990), the court concluded that former employees are parties represented by the former employer's counsel within the meaning of Rule 4.2 and, therefore, cannot be the subject of informal *ex parte* contact. Some of the defendants in that case had contended that rule 4.2 does not, in any way, regulate *ex parte* contact with former employees. The court rejected this contention, concluding that the phrase "any other person" as used in the comment to the rule is general in nature and, by its ordinary meaning, encompasses certain former employees. *Id.* at 1040. Those certain former employees are persons "whose act or omission ... may be imputed for purposes of civil or criminal liability." *Id.* "The harm caused by the imputable act is the same whether the witness is a present or former employee. The change in employment status does not effect [sic] the nature of his or her activities vis-a-vis whether they are imputable to the employer." *Id.* at 1042. Furthermore, nothing in the text or comments to the rule indicates this broad category is limited to current employees. *Id.* at 1040.

Yet, a majority of the courts considering the issue have a different view. *See Polycast Technology; Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77 (D.N.J.1991) (Rule 4.2 does not prohibit *ex parte* contact with former employees who had no contact with plaintiff); *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36 (D.Mass.1987); *Wright by Wright v. Group Health Hosp.*, 103 Wash.2d 192, 691 P.2d 564 (1984) (DR7–104(A)(1) does not apply to former employees); *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (App.1990) (court stated in dicta that DR7–104(A)(1) applies only to current employees; followed comment to Rule 4.2). In *Polycast Technology*, the court concluded that there was no ethical ban prohibiting Polycast's counsel from having *ex parte* communications with a former employee of Uniroyal or from representing him at a deposition.[3] 129 F.R.D. at 628. Polycast had filed suit against Uniroyal alleging that Uniroyal supplied it with misleading financial information in connection with the sale of Uniroyal's Plastics Products Division.

The court believed that, as applied to former employees, only two purposes behind the prohibition on *ex parte* communi-

---

**3.** The ethical rule at issue in *Polycast Technology* was Disciplinary Rule 7–104(A)(1) which is substantially the same as ER 4.2 and provides:
During the course of his representation of a client a lawyer shall not ... [c]ommunicate or cause another to communicate on the sub-ject of the representation with a party he knows to be represented by a lawyer in the matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

cations come into play: the need to protect confidential information and the desire to protect the enterprise from liability-creating statements obtained through the greater skill of the lawyer. *Id.* at 626. The court concluded that neither of the purposes justified a blanket ban on communication with former employees. *Id.* at 627–28. Former employees are usually unaware of the corporation's legal strategies after employment is terminated and will usually have no access to privileged information while employed. *Id.* at 628. And, while a former employee's "statements to opposing counsel may be damaging to the corporation, they are no more so than the statements of a former employee who merely witnessed the liability-creating acts *but did not commit them."* *Id.* (Emphasis added.)

Likewise, in *Amarin Plastics,* the court concluded there was no ethical ban to Amarin's counsel having *ex parte* contacts with Samuel Shapiro, a former president and vice-chairman of the board of directors of Maryland Cup. Amarin had filed suit against Maryland Cup alleging breach of contract. After his retirement, Shapiro assisted Maryland Cup's counsel in connection with the litigation.

Maryland Cup claimed that rule 4.2 was broad enough to include former control-group employees whose acts or omissions could be imputed to the corporation. The court concluded that even if the comment applied to the dispute, Maryland Cup failed to demonstrate any act or omission of Shapiro that could be imputed to Maryland Cup for purposes of civil liability. 116 F.R.D. at 40. "The mere fact Shapiro may be a prospective witness, even a critical one, does not trigger the prohibitions [on *ex parte* contact]." *Id.*

Our own committee on ethics considered the issue in the context of contact with former employees of a co-defendant. The committee was unable to reach a consensus and issued alternative opinions. Alternative Opinion (A) concludes that *ex parte* contacts are ethically proper without first obtaining consent of the co-defendant's counsel "even if the former employee occu-

pied a managerial position or the former employee's acts or omissions are at issue in connection with the matter being litigated." Arizona Committee on the Rules of Professional Conduct, Formal Op. 89–05, Alternative Op. (A) (May 17, 1989) at p. 8. The committee reasoned that because exceptions exist to ethical considerations which govern conduct with present employees, "it does not follow ... that ER 4.2 imposes an absolute and unqualified ban on contacts with former employees who no longer have any affiliation with the entity involved." *Id.* at 4. The committee read the comment to rule 4.2 to prohibit communications "only where the act or omission of the individual at the time of the proposed communication may be imputed to the party." *Id.* at 4. Because a former employee's acts or omissions cannot be imputed to the corporation, the committee concluded ER 4.2 does not apply to former employees.

Alternative Opinion B, on the other hand, concludes that rule 4.2 prohibits *ex parte* contacts with two groups of former employees: (1) those whose acts or omissions while employed may be imputed to the employer for purposes of establishing liability, and (2) those who have had privileged communications with the former employer's counsel that relate to the subject matter of the proposed contact. The committee focused on the existence of the relationship at the time of the events in question, and not at the time of the proposed communication, as the point in time for analyzing the organization's liability for an employee's acts or omissions. The committee believed that "the comment to Rule 4.2 suggests that any person whose act or omission while employed may give rise to liability on the part of the corporation will be treated as a party for discovery purposes as well as for purposes of imputing liability." *Id.* at 14. The committee noted that the comment to rule 4.2 uses the term "person," not "employee," which suggests a broad application of the rule.

The American Bar Association Committee on Ethics has recently resolved the matter in favor of the position followed in Alternative Opinion A and concluded that rule 4.2 does not prohibit *ex parte* contacts

with unrepresented former employees. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 91–359 (March 22, 1991). The committee said that neither the rule nor the comments deal specifically with former employees and that the comment's use of the term "person" rather than "employee" is presumably to cover independent contractors. The committee recognized that persuasive policy arguments exist for extending rule 4.2 to cover some former corporate employees. However, the committee stated:

> The fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

ABA Formal Op. 91–359.

We believe the better approach is to permit *ex parte* contacts with former employees. First, neither the rule nor its comments specifically mention former employees. Had the rule been intended to cover former employees, it could have explicitly said so. Second, the rule does not ban all *ex parte* contacts, but only those with individuals listed in the comments. There is no reason to expand the scope of the ban once the employment relationship ends. Third, we agree with the *Polycast Technology* court that neither the threat of disclosure of confidential information nor the desire to protect the organization from liability-creating statements justifies a blanket ban on *ex parte* communications. These concerns are best dealt with on a case-by-case basis. Also, any movement away from informal discovery procedures will greatly increase the cost of litigation.

We do not, however, adopt a *per se* rule of permitting *ex parte* contacts simply because the individual is a former employee. Such an approach does not comply with the requirement of ER 4.2 of prohibiting *ex parte* contacts with persons whose acts or omissions in connection with the matter may be imputed to the organization. For example, if an employee hired to drive a truck is involved in an accident that occurs in the course and scope of employment, the fact that the employee leaves his or her employment should not determine the propriety of *ex parte* communications. Clearly, the employee's acts or omissions in connection with any litigation that arises out of the accident can be imputed to the former employer for purposes of civil liability. Obviously, the former employer's lawyer should be given the opportunity to consent to an *ex parte* contact with that employee.

We agree with the distinction recognized in *Amarin Plastics*, and hold that ER 4.2 does not bar counsel from having *ex parte* contacts with a former employee of an opposing party where the former employer is represented by counsel *unless* the acts or omissions of the former employee gave rise to the underlying litigation or the former employee has an ongoing relationship with the former employer in connection with the litigation.

■ Here, it is undisputed that neither Benn nor Viruso had any involvement in the underlying transaction with Lang. Thus, they cannot be said to have committed any acts or omissions in connection with the litigation. They may have information which is damaging to East Valley, but this does not justify a ban on *ex parte* communications.

■ East Valley points out that Benn worked for it at the time the lawsuit was filed and has assisted in responding to discovery and in preparing the defense. We distinguish Benn's involvement in this case from the facts presented in *MMR/Wallace Power & Indus. v. Thames Assoc.*, 764 F.Supp. 712 (D.Conn.1991). MMR moved to disqualify defendant's counsel and his law firm on the ground that counsel had unauthorized *ex parte* contact with Richard Willett, a "confidential former employee" of MMR and an "irreplaceable member of MMR's litigation team." *Id.* at 714. The evidence showed that Willett assisted MMR's counsel while he was employed and after he left MMR's employment in a num-

ber of ways. He was responsible for setting up MMR's document control system, accompanied MMR's counsel to locations where requested documents were stored, worked with counsel in deciding which documents to copy, and prepared several reports concerning issues in the litigation. Willett also attended and participated in a number of confidential meetings with MMR's counsel to discuss litigation tactics and strategies. He consulted with counsel regarding the people who were going to be deposed and served as an on-site observer for MMR at counsel's request.

The court granted MMR's motion to disqualify. In doing so, it distinguished *Amarin Plastics* on the grounds that the former employee in that case did not have an ongoing relationship with opposing counsel as a trial consultant and paralegal up until the time of the *ex parte* contact. *Id.* at 726, n. 23.

Here, the record is unclear as to the nature of Benn's involvement in this litigation other than the fact that he assisted in the preparation of answers to interrogatories. East Valley does not contend that Benn acquired confidential information, nor that if he did, the information was disclosed to Lang's counsel. There is no evidence of any ongoing relationship between East Valley and Benn which would distinguish this case from *Amarin Plastics.*

We do not mean to imply that the type of involvement or assistance that was present in *MMR/Wallace Power & Indus.* is the minimum required to preclude *ex parte* communication with a former employee. We only conclude that the evidence of Benn's involvement in this case does not rise to the required level.

### 3. Motion to Quash Subpoenas

Lang contends the trial court abused its discretion in granting East Valley's motion to quash subpoenas duces tecum issued to William Kester, Mike Breyfogle, Gene Jones and William Koloseike. Lang contends she is entitled to depose these individuals in order to establish similar fraudulent acts. She argues that evidence of East Valley's fraudulent acts before and after

the transaction with her are relevant concerning punitive damages. East Valley responds that these depositions would be unduly burdensome and expensive.

As a rule, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Rule 26(b), Rules of Civil Procedure. The purpose of discovery is to avoid surprise and prevent the trial from being a "guessing game." *Watts v. Superior Court,* 87 Ariz. 1, 5, 347 P.2d 565, 567 (1959).

 Evidence of a seller's past deceptive sales practices is relevant to the issue of whether the seller is involved in the deceptive rules practices and to the issue of punitive damages. *Dunlap v. Jimmy GMC,* 136 Ariz. 338, 343, 666 P.2d 83, 88 (App.1983). Also, similar fraudulent representations made to others are relevant in a fraud action on the issues of *scienter* and plan or motive. Ariz.R.Evid. 404(b).

 Here, the trial court granted the motion to quash solely because none of the proposed deponents was involved in the transaction with Lang. The trial court noted that Lang's allegations and claims relate to East Valley's representations concerning the value and condition of the car she purchased. The depositions sought are solely for the purpose of providing information on the issues of punitive damages. The court concluded that it is irrelevant whether East Valley may be devious or crooked. "What is relevant," said the court, "is what is alleged in the complaint and the issues joined. None of the proposed deponents knows anything about the representations made re: valuation or condition."

This is clearly an incorrect application of the law. Lang sought to depose the named individuals in an effort to establish other deceptive or fraudulent activities. The fact that none of the deponents had any involvement with Lang is irrelevant. Accordingly, we find the trial court abused its discretion in granting the motion to quash.

### CONCLUSION

We hold that counsel may have *ex parte* contact with a former employee of an op-

posing party who is represented by counsel without violating ER 4.2 unless the acts or omissions of the former employee gave rise to the underlying litigation or the former employee has an ongoing relationship with the former employer in connection with the litigation.

In this case, it is undisputed that neither Benn nor Viruso were involved in the transaction with Lang and their acts or omissions did not give rise to the underlying litigation. Furthermore, there is no evidence in the record which shows that either had an ongoing relationship with East Valley in connection with the litigation. There is evidence which shows that Benn assisted East Valley in preparing for the defense in the case by assisting in the preparation of answers to interrogatories. We do not believe this rises to the level of involvement required to preclude *ex parte* communications.

We also hold that the trial court abused its discretion in granting East Valley's motion to quash subpoenas.

JACOBSON, P.J., and LANKFORD, J., concur.