852 P.2d 1256

**YUMA REGIONAL MEDICAL CENTER, a corporation, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF YUMA, the Honorable Tom C. Cole, a judge thereof, Respondent Judge,**

Olga Isabelle PINZON, a minor, Soraya Pinzon and Jorge Pinzon, individually and as natural parents of Olga Isabelle Pinzon, Real Parties in Interest.

No. 1 CA–SA 92–0298.

Court of Appeals of Arizona, Division 1, Department B.

April 22, 1993.

Reconsideration Denied May 28, 1993.

Review Denied June 15, 1993.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Tom Slutes, Tucson, for petitioner.

Leonard & Clancy, P.C. by James J. Leonard, Jr. and Kenneth P. Clancy, and J. Richard Gama, P.C. by J. Richard Gama, Phoenix, for real parties in interest.

Snell & Wilmer by Thea Foglietta Silverstein, Phoenix, for amicus curiae Yuma Regional Medical Center Medical Staff.

## OPINION

JACOBSON, Presiding Judge.

The sole issue raised by this petition for special action is whether the trial court's order requiring petitioner to furnish certain information, in accordance with uniform medical malpractice interrogatory # 17, violates the peer review privilege, A.R.S. §§ 36–445 *et seq.*

## FACTS AND PROCEDURAL BACKGROUND

Petitioner Yuma Regional Medical Center (Yuma Regional) is one of several defendants in a medical malpractice action brought by real parties in interest Pinzon (plaintiffs) in Yuma County Superior Court. During the course of discovery, plaintiffs propounded recently adopted uniform medical malpractice interrogatory #17 on Yuma Regional, basically asking whether any peer review meetings had been held in relation to plaintiff, and, if so, asking Yuma Regional to provide the following:

A. The date and place where it was held.

B. The name of each person present.

C. Whether any written memoranda or minutes were made of the meeting.

D. Please list each written or documentary item submitted to the committee or organization.

E. As to each item set forth in subsection (d) above, please state whether you contend the item is privileged (i.e., not subject to discovery.)

Yuma Regional initially answered interrogatory #17 in the negative, but later acknowledged that a peer review meeting had been conducted regarding plaintiff.

In October 1992, the trial court, with some alterations, essentially ordered Yuma Regional to answer interrogatory #17. Yuma Regional objected on the basis that the peer review privilege, A.R.S. §§ 36–445 et seq., prohibited the inquiries requested. The defendant doctors and the Yuma Regional Medical Center medical staff joined in the objection. Subsequently, on December 15, 1992, the trial court entered the order at issue here, requiring Yuma Regional to furnish the following:

1. The date and place where any peer review proceedings were held and at which proceedings the occurrences complained of in this case were discussed;

2. The name of each person present at such proceedings;

3. Whether any written memoranda or minutes were made of such meeting;

4. A list of each written or documentary item submitted to the peer review committee;

5. As to each name and item set forth in numbers 2 and 4 above, please state whether you contend the name or item is privileged (i.e. not subject to discovery). As to any such name or item which you contend is privileged, please promptly furnish the plaintiff with a response with the information which you deemed privileged redacted therefrom and provide the Court with the original of the same in a sealed envelope marked "confidential" and a redacted copy of the same so that the Court may review in camera the claimed privileged material;

6. Whether a physician's privileges were changed or disciplinary action taken against a physician whose conduct or actions was a subject matter of the peer review proceedings.

Yuma Regional then petitioned this court for special action relief, contending that the trial court abused its discretion because its December 15th order violated §§ 36–445 et seq. See generally Rule 3, Arizona Rules of Procedure for Special Actions. On January 11, 1993, we accepted jurisdiction of this special action and in part granted the relief requested, stating that this opinion would follow.

## SPECIAL ACTION JURISDICTION

Generally, special action relief is inappropriate for resolving discovery disputes. Lang v. Superior Court, 170 Ariz. 602, 604, 826 P.2d 1228, 1230 (App.1992). In such cases, a direct appeal is considered an adequate post-trial remedy. Id. In this case, however, an appeal cannot remedy the damage that will have been done if Yuma Regional is compelled to disclose otherwise privileged information. Cf. Avila v. Superior Court, 169 Ariz. 49, 50, 816 P.2d 946, 947 (App.1991). Moreover, this is a purely legal question that has statewide importance because of its genesis in uniform interrogatory #17. See State ex rel. McDougall v. Superior Court, 173 Ariz. 385, 843 P.2d 1277 (App.1992). Conse-

quently, special action relief is appropriate in this case.

## DISCUSSION

As noted, we granted Yuma Regional part of the relief it requested. Specifically, we found the information requested in items 2, 4, and 5 of the trial court's December 15, 1992 order to be protected by the peer review privilege, but directed Yuma Regional to comply with the remainder of the order. We address each item in turn.

*Item 2: Names of Persons Present*

■ Item 2 of the trial court's order requests disclosure of the names of each person present at the peer review proceeding. Yuma Regional and its medical staff object to this request on the basis that such disclosure will lead to a marked disinclination on the part of physicians to appear at peer review proceedings.

A.R.S. § 36–445.01(A) provides, in pertinent part:

All proceedings, records and materials prepared in connection with the reviews provided for in § 36–445, including all peer reviews of individual health care providers ... and the records of such reviews, shall be confidential and shall not be subject to discovery....

Although interpreting the scope of the peer review privilege is not unlike trying to draw a bright line in shifting sand, this court has previously held that this privilege "protects the peer review process itself— the discussions, exchanges and opinions found in the committee minutes." *Humana Hosp. Desert Valley v. Superior Court*, 154 Ariz. 396, 401, 742 P.2d 1382, 1387 (App.1987). Put another way, it protects "the internal workings and deliberative processes of regularly constituted committees...." *Id.* at 403, 742 P.2d at 1389.

Important policy considerations underlie the protection afforded by the peer review privilege. The legislature has mandated that peer reviews be conducted "for the purposes of reducing morbidity and mortality and for the improvement of the care of patients...." A.R.S. § 36–445. However,

doctors are somewhat reluctant to engage in peer review.

Review by one's peers within a hospital is not only time consuming, unpaid work, it is also likely to generate bad feelings and result in unpopularity.

*Humana Hospital*, 154 Ariz. at 400, 742 P.2d at 1386, *citing Scappatura v. Baptist Hosp.*, 120 Ariz. 204, 210, 584 P.2d 1195, 1201 (App.1978). Consequently, these reviews will effectively terminate if they are subject to unlimited discovery processes. *Humana Hospital*, 154 Ariz. at 400, 742 P.2d at 1386.

Plaintiffs acknowledge the scope of the peer review privilege and the policy behind it, but contend that neither are violated by disclosure of the names of the persons present at the peer review proceeding. This brings us then to a threshold question: why do plaintiffs want the names of the persons present at this proceeding? We believe the answer is two-fold.

First, it is entirely conceivable that revelation of a particular participant at the proceeding will *ipso facto* reveal what was discussed—specifically in the case of specialists—thereby allowing plaintiffs to indirectly discover the nature of the testimony, although they cannot discover this directly. *See generally Humana Hospital, supra.*

Second, § 36–445.01(A) prohibits the subpoenaing of a participant in a peer review proceeding if the subpoena is based solely on peer review activities. If plaintiffs have a basis outside the peer review process to subpoena a person who participated in the proceeding, plaintiffs can *a fortiori* discover that basis outside the peer review process. Again, we see no benefit to disclosure of the participants in the proceeding to plaintiffs except as an attempt to ascertain what occurred in the peer review process and thus thwart the privilege.

Plaintiffs are free to depose any of the defendants in this matter and to retain experts to give opinions regarding any issue raised. We simply see no reason to disclose the names of the participants in a peer review proceeding other than to somehow discover information relevant to that proceeding. We hold that the trial court's

order that Yuma Regional disclose the names of the persons present at the peer review proceeding at issue in this case violates the peer review privilege.

### Item 4: List of Written or Documentary Items Submitted

■ Item 4 of the court's order requests Yuma Regional to furnish a list of each written or documentary item submitted to the peer review committee. Again, Yuma Regional and its medical staff argue that compliance with this order will severely inhibit the peer review process.

■ As plaintiffs note, the peer review privilege does not protect information that originated outside the peer review process and that is discoverable from alternative sources. *Humana Hospital,* 154 Ariz. at 400–01, 742 P.2d at 1386–87; *see also John C. Lincoln Hosp. v. Superior Court,* 159 Ariz. 456, 459, 768 P.2d 188, 191 (App. 1989). The fact that a peer review committee has obtained information does not render that information privileged if it was not previously privileged. *Humana Hospital,* 154 Ariz. at 402–03, 742 P.2d at 1388–89. Consequently, a plaintiff's medical records available pursuant to consent are not privileged even though these would obviously have been used by the peer review committee. Similarly, a request to produce personnel, administrative, or other hospital records propounded on a defendant hospital or doctor will result in production of these records [1] despite such having been used in the peer review process. These records and documents originate outside the peer review process and are obtainable from sources other than the peer review process. *See generally id.*

Given plaintiffs' relative freedom to discover what undoubtedly is a good part of the information considered at the peer review proceeding, we focus on the list ordered disclosed in this case. Inherent in plaintiffs' ability to obtain information from another source is the knowledge on plaintiffs' part that such information exists. In this case, although the written or documentary items submitted to the committee may indeed have originated outside the peer review process, plaintiffs cannot obtain these items without first knowing what to ask for. Herein lies the real benefit to plaintiffs of the list ordered here: it informs plaintiffs what the peer review participants consider to be relevant information to plaintiffs' case—information of which plaintiffs might be unaware.

For example, Yuma Regional is particularly concerned about disclosure of various medical articles or treatises that a participant in the peer review process might bring to a proceeding.[2] Such articles and treatises clearly originated outside the peer review process, and plaintiffs or their experts are entirely free to obtain this information from the original source, *if* they know that such information exists. However, requiring Yuma Regional to list that article or treatise as having been submitted to the peer review committee reveals that at least one participant in the proceeding considered this particular point of inquiry important. Such a list, therefore, by its very nature involves "the internal workings and deliberative processes" of the peer review proceeding. *Humana Hospital,* 154 Ariz. at 403, 742 P.2d at 1389.

■ In sum, a plaintiff is entitled to discover any information that (1) originated outside the peer review process, and (2) is obtainable from alternative sources, de-

---

**1.** Although plaintiffs do not make this argument, we can presume that another reason they want this list is to ensure that those records that they have obtained from other sources, such as plaintiff's hospital records, are complete and accurate. If plaintiffs have evidence that defendants have not fully complied with otherwise valid requests to produce, plaintiffs can proceed through more direct avenues, such as a motion to compel. *See generally* Rule 37, Arizona Rules of Civil Procedure. If they have no such evidence, then this attempt at verifying defendants' compliance with discovery requests must fail in light of the importance of the privilege.

**2.** We can foresee that there are any number of written or documentary items submitted to a peer review committee other than medical articles and treatises that would be privileged under our analysis. Although Yuma Regional primarily focuses its argument on these items, we do not intend to so limit our holding.

spite the fact that this same information was used in a peer review proceeding. However, a plaintiff is not entitled to engage in a fishing expedition to ascertain what information was considered by the peer review committee where such information might reveal the deliberative process of the participants. Consequently, the trial court's order requiring Yuma Regional to list each written or documentary item submitted to the peer review committee is violative of the peer review privilege.

### Item 5: In Camera Review

Item 5 of the trial court's order required Yuma Regional to furnish plaintiffs with a redacted copy of the information divulged in items 2 and 4 above and to provide the court with a redacted copy and an original of the same so that the court could review *in camera* any assertedly otherwise privileged material. Because we find that the information requested in items 2 and 4 violates the peer review privilege, we find that requiring submission of the documents referred to in items 2 and 4, in any form, is violative of the privilege for the reasons discussed above.

### Items 1 and 3: Date, Time, and Place/Whether Minutes Kept

██ Items 1 and 3 ordered Yuma Regional to furnish the date and place of any peer review proceeding at which the occurrences at issue here were discussed and whether any written memoranda or minutes were made in connection therewith. We need not prolong our discussion of these items as Yuma Regional does not really contest them.[3] Clearly, this information is not protected by the peer review privilege. This basic factual information does not reveal anything about the internal workings or deliberative processes of the peer review proceeding. *Humana Hospital*, 154 Ariz. at 403, 742 P.2d at 1389. Moreover, A.R.S. § 36–445.01(B) provides for testimony as to whether peer review was conducted with regard to the subject

matter being litigated. *Id.* at 400, 742 P.2d at 1386. We hold that the information requested by items 1 and 3 of the trial court's order is not protected by the peer review privilege and have, by our prior order, directed Yuma Regional to furnish plaintiffs with this information.

### Item 6: Change in Privilege/Disciplinary Action Taken

██ Yuma Regional was ordered in item 6 to furnish the following information:

6. Whether a physician's privileges were changed or disciplinary action taken against a physician whose conduct or actions was a subject matter of the peer review proceedings.

Yuma Regional contends that this part of the court's order flies directly in the face of A.R.S. § 36–445.01(B), which provides, in part:

The contents and records of the peer review proceedings are fully confidential and inadmissible as evidence in any court of law.

Plaintiffs argue that, although "the internal workings and deliberative processes" of the peer review committee are privileged, the "effect" of the proceeding is not.[4] *Id.* at 403, 742 P.2d at 1389.

We need not determine whether the "effect" of the peer review proceeding is discoverable in this case. Although item 6 narrowed the request to those physicians whose conduct was the subject of a peer review proceeding, item 6 did not specifically request disclosure of the "effect" of that proceeding. Rather, it simply inquired whether any action was taken against such a physician or whether there had been a change in his privileges. It is axiomatic that the "effect" of a peer review proceeding might precipitate a change in privileges or disciplinary action, but such is not necessarily the case. *Cf. John C. Lincoln Hospital*, 159 Ariz. at 459, 768 P.2d at 191. Moreover, such information would undoubtedly be available to plaintiffs through

---

**3.** Yuma Regional has admitted that a peer review meeting took place on October 10, 1989 and that minutes were kept.

**4.** The statement in *Humana Hospital* that the "effect" of the peer review proceeding is not immune from discovery was dictum.

a number of avenues, not the least of which would be through direct inquiry of the defendant doctors themselves.

Consequently, we are not called upon to determine whether specific information as to sanctions flowing from the peer review process is protected under the peer review privilege. We have directed Yuma Regional by our prior order to comply with this part of the trial court's order.

## CONCLUSION

The peer review privilege, A.R.S. §§ 36–445 *et seq.*, protects from disclosure the names of the participants in a peer review proceeding as well as the listing of any written or documentary items submitted to the peer review committee. Such information is inherent in the privilege as indicative of the "discussions, exchanges and opinions" of the committee. The trial court's order in this case, which significantly reflected the new medical malpractice interrogatory # 17, has been vacated insofar as it requested Yuma Regional to furnish plaintiffs with such information.

For the foregoing reasons, we accept jurisdiction and grant relief in part.

GRANT and WEISBERG, JJ., concur.