659 So.2d 1156 (1995)
Walter REYNOSO, as Guardian of Cathleen Mangan, an Incompetent, Petitioner,
v.
GREYNOLDS PARK MANOR, INC., a Florida corporation, Respondent.
No. 95-1290.
District Court of Appeal of Florida, Third District.
August 10, 1995.
Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel D. Eaton; *1157 Freidin & Hirsh and Jeffrey Stephen Hirsh, Miami, for petitioner.
Wicker, Smith, Tutan, O'Hara, McCoy, Graham, Lane & Ford and Shelley H. Leinicke, Fort Lauderdale, for respondent.
Before JORGENSON, COPE and GREEN, JJ.

On Rehearing Granted
COPE, Judge.
The court grants the petitioner's motion for rehearing, withdraws its previous disposition in this case, and substitutes the following opinion:
Walter Reynoso petitions for a writ of certiorari to quash a trial court order forbidding petitioner-plaintiff from conducting ex parte interviews with former employees of respondent-defendant Greynolds Park Manor, Inc. We grant the petition.
Plaintiff Reynoso is the guardian of an elderly incompetent, Cathleen Mangan. He has filed an action on her behalf against defendant Greynolds Park Manor, Inc., a nursing home. The lawsuit alleges that the ward suffered personal injury while in the care of defendant nursing home, in violation of section 400.022, Florida Statutes (1993), and the common law duty of care.
During discovery, plaintiff requested information regarding former nursing home employees who had cared for the ward during the time periods relevant to the lawsuit. The nursing home moved for a protective order to preclude the plaintiff from any ex parte contact with former nursing home employees. The motion for protective order was based on the Second District decision in Barfuss v. Diversicare Corp. of America, 656 So.2d 486 (Fla. 2d DCA 1995). The Barfuss court interpreted Rule 44.2 of the Rules of Professional Conduct to preclude plaintiff's counsel from having any ex parte contact with former employees of a nursing home who had cared for and treated the plaintiff. Id. at 487-88.
The trial court in the present case concluded that it was obliged to follow Barfuss because Barfuss was directly on point and this court had not previously addressed the issue. See Pardo v. State, 596 So.2d 665, 666-67 (Fla. 1992). Consequently the court granted the protective order.
By virtue of the protective order, plaintiff's counsel is precluded from contacting, or using an investigator to interview, the sixty former nursing home employees who previously cared for the ward. Instead plaintiff may only obtain discovery from those individuals by scheduling sixty depositions. Plaintiff has petitioned for a writ of certiorari.
The question presented here is whether Rule of Professional Conduct 4-4.2 prohibits plaintiff's counsel (or investigator) from making direct contact with former employees of a corporate defendant. Rule 4-4.2 provides:
RULE 4-4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer. Notwithstanding the foregoing, an attorney may, without such prior consent, communicate with another's client in order to meet the requirements of any statute or contract requiring notice or service of process directly on an adverse party, in which event the communication shall be strictly restricted to that required by statute or contract, and a copy shall be provided to the adverse party's attorney.
We conclude that the proscription of Rule 4-4.2 does not extend to former corporate employees.
The question presented here has been thoroughly, and in our view correctly, analyzed in American Bar Association Formal Ethics Opinion 91-359, dated March 22, 1991, and Florida Bar Ethics Opinion 88-14, issued March 7, 1989. We adopt their reasoning and incorporate them in the Appendix to this opinion. In so holding we align ourselves with the great majority of the courts to have considered this issue,[1] although there is authority *1158 to the contrary.[2] We point out the caveats contained at the end of the American Bar Association and Florida Bar opinions, reminding counsel that no inquiry can be made into any matters that are the subject of the attorney-client privilege, and that the requirements of Rule 4-4.3, entitled "Dealing With Unrepresented Persons," must be scrupulously observed.
We certify that this decision is in direct conflict with the decision of the Second District Court of Appeal in Barfuss. Because the issue presented here affects numerous cases in litigation, as well as the scope of attorneys' ethical responsibilities under Rule 4-4.2, there is a need for an authoritative resolution by the Florida Supreme Court.
For the reasons stated, the petition for writ of certiorari is granted and the order prohibiting interviews with former employees is quashed.
Certiorari granted; direct conflict certified.

APPENDIX

ABA/BNA Lawyers' Manual on Professional Conduct

ETHICS OPINIONS

ABA FORMAL OPINIONS

FORMAL OPINION 91-359

MARCH 22, 1991
Contact With Former Employee Of Adverse Corporate Party
The prohibition of Rule 4.2 with respect to contacts by a lawyer with employees of an opposing corporate party does not extend to former employees of that party.
The Committee has been asked for its opinion whether a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without the consent of the corporation's lawyer, communicate about the subject of the *1159 representation with an unrepresented former employee of the corporate party.
The starting point of our inquiry is Model Rule of Professional Conduct 4.2, which states:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
The rule is, for purposes of the issue under discussion, substantially identical to DR 7-104(A)(1), which states as follows:
(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
The comment to Rule 4.2 makes clear that corporate parties are included within the meaning of "party" in that Rule, and is helpful in defining the contours of that rule as it applies to present employees of corporate parties:
(1) This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with non lawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
(2) In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for the purposes of this Rule. Compare Rule 3.4(f).
(3) This Rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.
The rationale on which Rule 4.2 was formulated was identified in Wright v. Group Health Hospital, 103 Wash.2d 192, 691 P.2d 564, 567 (1984).
The purposes of the rule against ex parte communications with represented parties are "preserving the proper functioning of the legal system and shielding the adverse party from improper approaches." (Citing ABA Formal Opinion 108 (1934)).
The profession has traditionally considered that the presumptively superior skills of the trained advocate should not be matched against those of one not trained in the law. As discussed at Law.Man.Prof.Conduct 71:302.
... The rule against communicating with the opposing party without the consent of that party's lawyer does not admit of any exceptions for communications with "sophisticated" parties. Maru, 10861 (Fla. Bar Op. 76-21 (4/19/77)). See also Waller v. Kotzen, 567 F. Supp. 424 (E.D.Pa. 1983) (plaintiff's counsel contacted insurance company directly, after insurer was represented by counsel); Estate of Vafiades v. Sheppard Bus Service [192 N.J. Super. 301], 469 A.2d 971 (N.J. Super. 1983) (negotiations were conducted with insurance company for defendants).
*1160 cf. Meat Price Investigators Assn. v. Iowa Beef Processors, 448 F. Supp. 1, 3 (S.D.Iowa 1977) (while leaving question of culpability of counsel's conduct to disciplinary authorities, court declined to disqualify counsel for interviewing an officer of an opposing party who was a "sophisticated businessman who was openly willing to share his knowledge of the beef industry with attorneys he knew to be plaintiff's counsel.") See also Code of Professional Responsibility EC 7-18:
The legal system in its broadest sense functions best when persons in need of legal advice or assistance are represented by their own counsel. For this reason a lawyer should not communicate on the subject matter of the representation of his client with a person he knows to be represented in the matter by a lawyer, unless pursuant to law or rule of court or unless he has the consent of the lawyer for that person... .
The comment to Rule 4.2 limits those present corporate employees covered by this rule to:
persons having a managerial responsibility on behalf of the organization, and ... any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.
The inquiry as to present employees thus becomes whether the employee (a) has "a managerial responsibility" on behalf of the employer-corporation, or (b) is one whose act or admission in connection with the matter that is the subject of the potential communicating lawyer's representation may be imputed to the corporation, or (c) is one whose "statement may constitute an admission" by the corporation.
Whether an employee falls into any of these three categories is inevitably an issue affected by a host of factors, the exploration of none of which need detain us. These include at least the terms of the relevant statutory and common law of the state of the corporation's incorporation; applicable rules of evidence in the relevant jurisdiction; and relevant corporate documents affecting employees' duties and responsibilities.
At least insofar as the test of imputable act or omission is concerned all of these factors, in turn, would have to be applied within the context of "the matter in representation" to determine whether the acts or omissions of the employee can be imputed to the corporation with respect to that particular matter. That requires a determination of the scope of the subject matter of the potentially-communicating lawyer's representation.
The comment  by defining three categories of unrepresented corporate employees with whom communication "concerning the matter in representation" is prohibited absent the consent of the corporation's counsel or authorization of law  clearly implies that communication with all other employees on "the matter in representation" is permissible without consent, subject only to such other rules and other law as may be applicable. (E.g., Rule 4.1, requiring truthfulness in statements to others and Rule 4.3, addressing a lawyer's dealings with unrepresented persons.)
Neither the Rule nor its comment purports to deal with former employees of a corporate party. Because an organizational party (as contrasted to an individual party) necessarily acts through others, however, the concerns reflected in the Comment to Rule 4.2 may survive the termination of the employment relationship.
(It is appropriate to note here that those addressed by the Comment are not denominated "employees" but "persons." The Rule presumably covers independent contractors whose relationship with the organization may have placed them in the factual position contemplated by the Comment. Because the issue this Opinion addresses deals expressly with former employees, we need not explore the ramifications of this expansive terminology.)
While Rule 4.2 does not purport by its terms to apply to former employees, courts confronting the issue have interpreted Rule 4.2 (as illuminated by its comment) and DR 7-104(A)(1) (which does not have such a comment *1161 or comparable discussion in any Ethical Consideration) in various ways.
Most recently, in an aside in a case dealing with current employees under DR 7-104(A)(1), the New York Court of Appeals noted its agreement with the Appellate Division that the rule applies "only to current employees, not to former employees." Niesig v. Team I et al, 76 N.Y.2d 363 [559 N.Y.S.2d 493], 558 N.E.2d 1030 (1990). See also Wright by Wright v. Group Health Hosp., 103 Wash.2d 192, 691 P.2d 564 (1984) (reasoning that former employees could not possibly speak for or bind the corporation, and therefore interpreting DR 7-104(A)(1) as not applying to them); and Polycast Technology Corp. v. Uniroyal, Inc., 129 F.R.D. 621 (S.D.N.Y. 1990) (holding that DR 7-104 does not bar contacts with former corporate employees, at least in absence of a showing that the employee possessed privileged information).
On the other hand, other courts have held that former employees are covered (it is usually phrased that they will be considered "parties" for ex parte contact purposes) under certain circumstances. Thus, Rule 4.2 has been held to bar ex parte contacts with former employees who, while employed, had "managerial responsibilities concerning the matter in litigation." Porter v. Arco Metals, 642 F. Supp. 1116, 1118 (D.Mont. 1988 [1986]). In Amarin Plastics v. Maryland Cup Corp., 116 F.R.D. 36 (D.Mass. 1987) the Court, while recognizing the possible applicability of Rule 4.2 to former employees, declined to apply it on the facts of that case. It noted, however, the additional possibility that communications between a former employee and his former corporate employer's counsel may be privileged. Id., at 41. See also In re Coordinated Pre-Trial [Pretrial] Proceedings in Petroleum Products Antitrust Litigation, 658 F.2d 1355, 1361 n. 7 (9th Cir.1981), cert. denied, 455 U.S. 99 [990, 102 S.Ct. 1615, 71 L.Ed.2d 850] (1982) (noting that the rationale of Upjohn v. United States, 449 U.S. 383 [101 S.Ct. 677, 66 L.Ed.2d 584] (1981), with respect to corporate attorney-client privilege applies to former as well as current corporate employees). In Public Service Electric and Gas Company v. Associated Electric and Gas Ins. Services, Ltd., 745 F. Supp. 1037 (D.N.J. 1990) the court interpreted Rule 4.2 to cover all former employees.
Commentators on the subject of ex parte contacts with former employees have likewise urged application of the prohibition on contacts to at least some former corporate employees. See, e.g., Stahl, Ex Parte Interviews with Enterprise Employees: A Post-Upjohn Analysis, 44 Wash. & Lee L.Rev. 1181 at 1227 (1987), recommending a functional approach deeming
any present or former employee who is identified with an enterprise, either for purposes of resolving disputed issues or effective representation of the enterprise, to be a party representative for discovery purposes. Any other rule would put enterprises at a distinct and unfair disadvantage and may effectively deny enterprises the full benefit of representation by counsel... .
See also Miller and Calfo, Ex Parte Contact with Employees and Former Employees of a Corporate Adversary: Is It Ethical?, 42 Bus. Law. 1053 at 1072-73 (1987):
[C]ourt authorization or opposing counsel's consent to ex parte contact should be required if the former employee was highly-placed in the company (such as a former officer or director) or if the former employee's actions are precisely those sought to be imputed to the corporation.
While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.
Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without *1162 violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.
With respect to any unrepresented former employee, of course, the potentially-communicating adversary attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege (a privilege not belonging to or for the benefit of the former employee, by the former employer). Such an attempt could violate Rule 4.4 (requiring respect for the rights of third persons).
The lawyer should also punctiliously comply with the requirements of Rule 4.3, which addresses a lawyer's dealings with unrepresented persons. That rule, insofar as pertinent here, requires that the lawyer contacting a former employee of an opposing corporate party make clear the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party. See, e.g., Brown v. Peninsula Hospital Centers [Center], 64 A.D.2d 685, 407 N.Y.S.2d 586 (App.Div. 1978) (attorneys for defendant hospital should have disclosed potential conflict of interest before talking to treating physician and producing him for deposition as hospital's representative); ABA Informal Opinion 908 (1966).
 Florida Bar Committee on Professional Ethics
 Opinion Number 88-14
 March 7, 1989
A plaintiff's attorney may communicate with former managers and former employees of a defendant corporation without seeking and obtaining consent of corporation's attorney.
* * *
The inquiring attorney's law firm represents the plaintiffs in a civil action against a corporation. The attorneys wish to have ex parte interviews with former employees of the defendant corporation who were employed by the corporation during the period when the actions or decisions on which the suit is based occurred. The former employees may include some who had managerial responsibilities and some whose acts or omissions during their employment might be imputed to the corporation for purposes of civil liability. As is usually the case, the defendant corporation objects to ex parte contacts with its former employees.
The issue is whether Rule 4-4.2, Rules Regulating The Florida Bar, prescribes the plaintiffs' attorneys from contacting former managers and other former employees of the defendant corporation except with the permission of the corporation's attorneys. As regards former managers and other former employees who have not maintained any ties with the corporation  who are no longer part of the corporate entity  and who have not sought or consented to be represented in the matter by the corporation's attorneys, the answer must be in the negative.
Rule 4-4.2 is substantially the same as its predecessors in the Code of Professional Responsibility (DR 7-104(A)(1)) and the earlier Canons of Professional Ethics (Canon 9). (The American Bar Association's "code comparison" for Model Rule 4.2 states that the rule is "substantially identical" to DR 7-104(A)(1).)
The rule forbids a lawyer to communicate about the subject of the representation with a person the lawyer knows to be represented in the matter unless the lawyer obtains the permission of the person's counsel. The comment to the rule states that in the case of organizations (including corporations), the rule prohibits ex parte communications with "persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." The comment further states that if an agent or employee of the organization is represented by his or her own counsel in the *1163 matter, then it is the consent of that lawyer  not the organization's lawyer  that must be obtained.
Nothing in Rule 4-4.2 or the comment states whether the rule applies to communications with former managers and other former employees. To the extent that the comment implies that the rule does apply to these individuals, it is contrary to ethics committees' interpretation of the rule.
Rule 4-4.2 cannot reasonably be construed as requiring a lawyer to obtain permission of a corporate party's attorney in order to communicate with former managers or other former employees of the corporation unless such individuals have in fact consented to or requested representation by the corporation's attorney. A former manager or other employee who has not maintained ties to the corporation (as a litigation consultant, for example) is no longer part of the corporate entity and therefore is not subject to the control or authority of the corporation's attorney. In many cases it may be true that the interests of the former manager or employee are not allied with the interests of the corporation. In such cases the conflict of interests would preclude the corporation's attorney from actually representing the individual and therefore would preclude the corporation's attorney from controlling access to the individual. As the comment indicates with regard to current employees, if a former manager or former employee is represented in the matter by his personal attorney, permission of that attorney must be obtained for ex parte contacts, including contacts by the corporation's attorney.
A former manager or employee is no longer in a position to speak for the corporation. Further, under both the federal and the Florida rules of evidence, statements that might be made by a former manager or other former employee during an ex parte interview would not be admissible against the corporation. Both Rule 801(d)(2)(D), Federal Rules of Evidence, and Section 90.803(18)(e), Florida Evidence Code, provide that a statement by an agent or servant of a party is admissible against the party if it concerns a matter within the scope of the agency or employment and is made during the existence of the agency or employment relationship.
This Committee has not previously had occasion to issue an opinion on the question of communicating with former managers and employees but, as indicated above, bar ethics committees in a number of states have done so. The clear consensus is that former managers and other former employees are not within the scope of the rule against ex parte contacts. Alaska Bar Opinion 88-3 (6/7/88) (Former employees are no longer part of corporate entity and no longer can act or speak on behalf of corporation; opposing lawyer therefore may contact former employees, including former members of corporation's control group who dealt with subject matter of litigation, but may not inquire into privileged communications); Colorado Bar Opinion 69 (Revised) (6/20/87) (Former employee cannot bind corporation as matter of law; lawyer may interview opposing party's former employees with regard to all matters except communications within corporation's attorney-client privilege); Illinois Bar Opinion 85-12 (4/4/86) (Former employees, including those who were part of corporation's control group, may be contacted without permission of corporate counsel; direct communications with former control group employees may elicit information adverse to corporation, but that direct contact no more deprives corporation of benefit of counsel than does direct communication with any potential witness); Los Angeles County, Calif., Bar Opinion 369 (11/23/77) (Although ethical dangers may be posed if rule prohibiting ex parte contacts is not extended to former controlling employees, no authority is found to support such extension); Maryland Bar Opinion 86-13 (8/30/85) (Lawyer may communicate with former employee of adverse corporate party if former employee is not represented by counsel).
Also, Massachusetts Bar Opinion 82-7 (6/23/82) (Lawyer may communicate with former employees of corporate defendant regarding matters within scope of their employment; former employees enjoy no current agency relationship that is being served by corporate counsel's representation); *1164 Michigan Bar Opinion CI-597 (12/22/80) (Plaintiff's attorney may communicate with prospective witness, who is former employee of corporate defendant, on subject matter of representation if employee is unrepresented); New York City Bar Opinion 80-46 (Former employees are no longer part of corporate entity and may be contacted ex parte); New York County Bar Opinion 528 (1965) (Although direct communication with any current manager or employee of defendant corporation is improper, restriction does not apply to communications with former employees); Virginia Bar Opinion 533 (12/16/83) (Lawyer may communicate directly with former officers, directors and employees of adversary corporation on subject of pending litigation unless lawyer has reason to know those witnesses are represented by counsel); Wisconsin Bar Opinion E-82-10 (12/82) (Lawyer may contact former employee of opposing party to obtain material information even though former employee was managing agent, if former employee has severed all ties with corporation and therefore is not in position to commit corporation).
See Wright v. Group Health Hospital [103 Wash.2d 192], 691 P.2d 564 (Wash. 1984). In Wright, the Washington Supreme Court ruled that because former employees cannot possibly speak for a defendant corporation, the rule against communicating with adverse parties does not apply. The court found no reason to distinguish between former employees who witnessed an event and those whose act or omission caused the event. The court said the purpose of the communication rule is not to protect a corporate party from revelation of prejudicial facts, but rather to preclude interviewing of employees who have authority to bind the corporation.
As stated above, it is ethically permissible for the inquiring attorney to contact former managers and other former employees of the opposing party without obtaining permission from the corporation's attorney unless those former employees are in fact represented by the corporation's attorney. But as indicated by some of the ethics committees cited above, the attorney should not inquire into matters that are within the corporation's attorney client privilege (e.g., asking a former manager to relate what he had told the corporation's attorney concerning the subject matter of the representation).
NOTES
[1] Those reaching a similar conclusion include the highest courts of several states:

In re Opinion 668 of Advisory Committee on Professional Ethics, 134 N.J. 294, 633 A.2d 959 (1993); Niesig v. Team I, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990); Fulton v. Lane, 829 P.2d 959 (Okla. 1992); Wright v. Group Health Hosp., 103 Wash.2d 192, 691 P.2d 564 (1984); State ex rel. Charleston Area Medical Ctr. v. Zakaib, 190 W. Va. 186, 437 S.E.2d 759 (1993); Strawser v. Exxon Co., U.S.A., 843 P.2d 613 (Wyo. 1992),
intermediate appellate courts of other states:
Lang v. Superior Court, 170 Ariz. 602, 826 P.2d 1228 (App. 1992); Continental Ins. Co. v. Superior Court, 32 Cal. App.4th 94, 37 Cal. Rptr.2d 843 (1995); Skirkanich v. Waterbury Hosp., No. 0100686, 1993 WL 480911 (Conn.Super.Ct. 1993); Carrier Corp. v. Home Ins. Co., No. CV88-35 23 83 S, 1992 WL 32568 (Conn.Super.Ct. 1992); DiOssi v. Edison, 583 A.2d 1343 (Del. Super. Ct. 1990),
and numerous federal district courts:
Lang v. Reedy Creek Improvement District, No. 94-693, 1995 WL 392215 (M.D.Fla. Mar. 28, 1995); Aiken v. Business & Indus. Health Group, Inc., 885 F. Supp. 1474 (D.Kan. 1995); Browning v. AT & T Paradyne, 838 F. Supp. 1564 (M.D.Fla. 1993); Brown v. St. Joseph County, 148 F.R.D. 246 (N.D.Ind. 1993); Sequa Corp. v. Lititech, Inc., 807 F. Supp. 653 (D.Colo. 1992); Goff v. Wheaton Industries, 145 F.R.D. 351 (D.N.J. 1992); Valassis v. Samelson, 143 F.R.D. 118 (E.D.Mich. 1992); In re Domestic Air Transp. Antitrust Litigation, 141 F.R.D. 556 (N.D.Ga. 1992); Sherrod v. The Furniture Ctr., 769 F. Supp. 1021 (W.D.Tenn. 1991); Action Air Freight, Inc. v. Pilot Air Freight Corp., 769 F. Supp. 899 (E.D.Pa. 1991), appeal dismissed, 961 F.2d 207 (3d Cir.1992); Hanntz v. Shiley, Inc., 766 F. Supp. 258 (D.N.J. 1991); Shearson Lehman Bros., Inc. v. Wasatch Bank, 139 F.R.D. 412 (D.Utah 1991); Dubois v. Gradco Sys., Inc., 136 F.R.D. 341 (D.Conn. 1991); University Patents, Inc. v. Kligman, 737 F. Supp. 325 (E.D.Pa. 1990); Polycast Technology Corp. v. Uniroyal, Inc., 129 F.R.D. 621 (S.D.N.Y. 1990).
No federal court of appeals has addressed this issue.
Finally, a number of state bar associations have reached the same conclusion. Most that have done so are collected in Florida Bar Ethics Opinion 88-14, supra. See also Dubois v. Gradco Systems, Inc., 136 F.R.D. at 345. By analogy see Castillo-Plaza v. Green, 655 So.2d 197 (Fla. 3d DCA 1995) (en banc).
[2] Courts reaching a contrary conclusion or imposing some limitations on such contact include: United States v. Florida Cities Water Co., No. 93-281, 1995 WL 340980 (M.D.Fla. Apr. 25, 1995); Rentclub, Inc. v. Transamerica Rental Fin. Corp., 811 F. Supp. 651 (M.D.Fla. 1992), aff'd, 43 F.3d 1439 (11th Cir.1995); Curley v. Cumberland Farms, Inc., 134 F.R.D. 77 (D.N.J. 1991); Public Serv. Elec. & Gas Co. v. Associated Elec. & Gas Servs., Ltd., 745 F. Supp. 1037 (D.N.J. 1990); PPG Indus., Inc. v. BASF Corp., 134 F.R.D. 118 (W.D.Pa. 1990); Chancellor v. Boeing Co., 678 F. Supp. 250 (D.Kan. 1988); Amarin Plastics, Inc. v. Maryland Cup Corp., 116 F.R.D. 36 (D.Mass. 1987); Porter v. Arco Metals Co., 642 F. Supp. 1116 (D.Mont. 1986); Bobele v. Superior Court, 199 Cal. App.3d 708, 245 Cal. Rptr. 144 (1988).