**Deborah SHARPE, et al.,**

v.

**LEONARD STULMAN ENTERPRISES LIMITED PARTNERSHIP, et al.**

No. L–97–3537.

United States District Court, D. Maryland.

July 21, 1998.

C. Christopher Brown, Lauren E. Willis, Baltimore, MD, for Plaintiffs.

Paul Mark Sandler, W. Michael Mullen, Joseph J. Coppola, Baltimore, MD, for Defendants.

## MEMORANDUM

LEGG, District Judge.

Before the Court are defendants' Motion in Limine to preclude the use of the affidavits and potential testimony of defendants' former employees, and plaintiffs' Motion to Interview the same witnesses. Defendants urge that this Court rule swiftly on the Motion in Limine, because they have served deposition notices on the witnesses in question for depositions to take place on August 10, 11, and 12, 1998. The parties have comprehensively briefed the issues regarding the Motions, and in light of the need for expediency in advance of the scheduled depositions, the Court dispenses with a hearing. *See* Local Rule 105.6 (D.Md.1997). For the reasons stated below, the Court shall, by separate Order, DENY defendants' Motion in Limine and GRANT plaintiff's Motion to Interview Witnesses.

## I. Background

At issue is the testimony of three former employees of the defendants: Dee Posedenti, Cynthia Thurlow, and Gilbert Rybak. Defendants operate an apartment complex in Baltimore County called Kenilworth at Perring Park. Plaintiffs, four African–American former tenants of the apartment complex, brought suit in this Court under the federal Fair Housing Act, alleging that the defendants discriminated against them on the basis of their race by "steering" them to less desirable units in the back of the complex.

This suit follows on the heels of a 1996 Maryland state court action, in which a not-for-profit fair housing organization called Baltimore Neighborhoods, Inc. ("BNI"), and two African–American "testers" brought suit against the same defendants alleging violations of state fair housing law for essentially identical "steering." According to BNI's counsel, BNI first learned of defendants' pattern of racial "steering" when it received an anonymous telephone call in 1994 from a former Kenilworth rental agent, who claimed that her supervisors had directed her to engage in this practice. (*See* Mot. Interview Witnesses Exh. A, Affid. Andrew D. Freeman ("Freeman Affid.") at ¶ 3.) After further anonymous conversations, BNI sent two "testers" to the complex, who apparently confirmed the informant's claims. The anonymous rental agent ultimately identified herself as Ms. Posedenti.

BNI's counsel investigated the claim further. During their investigation, counsel spoke with Ms. Posedenti and with another former rental agent, Ms. Thurlow. BNI filed its state court suit on August 31, 1995. In March 1997, after discovery had begun in the case, BNI's counsel informed counsel for Kenilworth that they intended to contact non-managerial employees of the apartment complex, and invited Kenilworth's counsel to file a protective order if appropriate; Kenilworth's counsel did not file such a motion. (Freeman Affid. at ¶ 9.)

In April, BNI's counsel obtained an affidavit from Ms. Posedenti; in June, counsel obtained affidavits from Ms. Thurlow and a

third former rental agent, Mr. Rybak. (*See* Mot. Interview Witnesses Exhs. B, C, & D.) Each of the three former rental agents confirmed in their affidavits that their supervisors had instructed them to "steer" African–Americans to units at the rear of the apartment complex. (*See id.*) According to BNI's counsel, none of the three former employees worked at Kenilworth at the time that BNI's "testers" had made their visits, and none of the three disclosed any of Kenilworth's confidential information or attorney-client privileged communications. (Freeman Affid. at ¶ 14.)

Kenilworth and BNI subsequently settled their suit. However, following media publicity of the BNI suit, plaintiffs brought the instant suit alleging similar "steering." Brown, Goldstein & Levy, the law firm which had represented BNI in the previous law suit, also represents plaintiffs in the instant law suit.[1] Suspecting that plaintiffs in this case would attempt to use the affidavits or testimony of the three former rental agents, defendants filed a Motion in Limine, asserting that use of the affidavits or testimony would violate professional conduct rules prohibiting certain *ex parte* communications. Plaintiffs, in turn, opposed the Motion in Limine and filed a "Motion to Interview Witnesses."

## II. Discussion

The legal dispute regarding contact with the defendants' former employees centers on this Court's interpretation of Maryland Rule of Professional Conduct 4.2. This Court applies the Maryland professional responsibility rules as adopted by the Maryland Court of Appeals. *See* Local Rule 704 (D.Md.1997). That Court has adopted the Maryland Rules of Professional Conduct. *See* Maryland Rule 16–812 & Appendix (Michie 1998). Maryland Rule of Professional Conduct 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent

of the other lawyer or is authorized by law to do so.

The official Comment to the Rule adds:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

On the Rule's face and even with the aid of the official Comment, Rule 4.2 is at best unclear regarding its application to ex parte contact with former employees of a party organization. In the absence of applicable Maryland precedent addressing this issue, several members of this Court have considered the scope and application of this Rule in cases involving *ex parte* communication with former employees, reaching somewhat different results. *See Plan Comm. v. Driggs,* 217 B.R. 67 (D.Md.1998) (Motz, C.J.); *Davidson Supply Co., Inc. v. P.P.E., Inc.,* 986 F.Supp. 956 (D.Md.1997) (Smalkin, J.); *Zachair, Ltd. v. Driggs,* 965 F.Supp. 741 (D.Md.1997) (Davis, J.); *Camden v. Maryland,* 910 F.Supp. 1115 (D.Md.1996) (Messitte, J.). To the extent that these cases disagree over the proper scope of the Rule, however, this Court need not resolve the conflict, because all of these cases agree that the Rule does not prohibit *ex parte* communication with former employees who do not possess confidential or privileged information, and whose statements or actions cannot be imputed to their former employer.

In *Camden,* Judge Messitte considered an employment discrimination case against Bowie State University ("BSU"). When the claim at issue had first come to its attention, BSU had assigned a Special Assistant to the President of BSU for affirmative action programs to investigate the allegations. *Camden,* 910 F.Supp. at 1116. The Special Assistant became the "principal contact person"

---

1. Therese Staudenmeier, who appeared on behalf of BNI in the previous law suit, had also entered an appearance in this action but has since withdrawn.

for BSU's counsel regarding the claim, regularly consulted with top BSU administrators and BSU's counsel on the case, and actively sent and received confidential communications, including assessments of the plaintiff's claims and appraisals of their likelihood of success. *Id.* at 1117. While the case was still pending, however, the Special Assistant left BSU on "less than amicable terms." *Id.* Thereafter, the Special Assistant spoke with plaintiff's counsel *ex parte* (and without BSU's knowledge), divulging communications between himself and BSU's counsel, as well as communications prepared by or based on the advice of BSU's counsel, including BSU's counsel's appraisal of the plaintiff's case. *Id.* at 1117–18.

After a thorough review of the case law and commentary on Rule 4.2, Judge Messitte held that

> a lawyer representing a client in a matter may not, subject to a few exceptions, have *ex parte* contact with the former employee of another party interested in the matter when the lawyer knows or should know that the former employee has been extensively exposed to confidential client information of the other interested party.

*Id.* at 1116. In so doing, Judge Messitte considered a preliminary draft of the Third Restatement of the Law Governing Lawyers, which he considered to "extract the organizing principle from th[e] various authorities" on the subject. *See id.* at 1121–22. The draft Restatement would extend the prohibition on *ex parte* communications in Rule 4.2 to "a person connected with the organization ... who supervises, directs or regularly consults with a lawyer representing the organization concerning the matter," as well as to "a person whom the lawyer knows to have been extensively exposed to relevant trade secrets, confidential client information, or similar confidential information of another party interested in the matter." *See id.* at 1121 (quoting Restatement (Third) of the Law Governing Lawyers §§ 159, 162 (Preliminary Draft No. 10, 1994)). Judge Messitte explained that the Restatement's summation of the authority was

> applicable to former as well as current employees [and] focuses not upon the indi-

vidual's status as employee, but looks instead to the extent of the confidences shared.... As Comment [d] to Proposed Rule 162 points out: 'Only some persons exposed to a principal's confidential information will have been exposed to the extent stated.' Former employees whose exposure has been less than extensive would still be available for *ex parte* interviews.

*Id.* at 1121–22. Applying the principle he had developed to the case at hand, Judge Messitte concluded that plaintiff's counsel had violated the Rule. *Id.* at 1123.

In *Zachair,* Judge Davis considered a similar issue. In that case, plaintiff contacted the principal defendant's former general counsel and vice-president, who was then a named defendant in the case, and offered to dismiss the general counsel as a defendant in exchange for a promise to "discuss th[e] case ... informally" with plaintiff's counsel. *Zachair,* 965 F.Supp. at 745 (alterations in original). The former general counsel, who had openly vowed to "ruin [the principal defendant] by doing everything within [the former counsel's] power, knowledge, and information to destroy him with properly or improperly disclosed factual information," gave a transcribed "informal interview" with plaintiff's counsel lasting seven hours. *Id.* at 745–46. Again, this contact was *ex parte* and without the remaining defendants' knowledge.

Quoting extensively from Judge Messitte's opinion regarding *ex parte* communication with those possessing confidential or privileged information, Judge Davis inspected the "interview" transcript *in camera* and concluded that the former general counsel "disclosed information undoubtedly confidential and almost certainly violative of the [principal] defendants' attorney-client privilege." *Id.* at 753. Finding that the contact violated the Rule, Judge Davis stated that

> [t]he concern shared by Rule 4.2 and the attorney-client privilege is that an individual (or entity) who reveals confidences to another individual occupying a position of high responsibility, most often a manager, but here an attorney consulted as such, should enjoy some assurance (at least in the context of on-going litigation) that those confidences cannot be freely divulged

to third parties unless certain prophylactic measures are in place.

*Id.* at 754.

Judge Smalkin was the next member of this Court to confront this issue his opinion in *Davidson Supply Co. Inc., v. P.P.E. Inc.* In that case, plaintiff's counsel secretly entered a settlement agreement and release with one of the ·named defendants, a former employee· of defendant P.P.E. Pursuant to the release, which called for the former employee's cooperation, plaintiff's counsel conducted the former employee's examination, under oath, in the· presence of the former employee's attorney. *Davidson Supply,* 986 F.Supp. at 957. When it discovered this cooperation, P.P.E. moved to disqualify plaintiff's counsel and to suppress the former employee's testimony.

Judge Smalkin noted an opinion of the Maryland State Bar Association's Committee on Ethics, which stated that contact with former employees did not violate Rule 4.2. *Id.* at 958. Believing that the Maryland Court of Appeals would not extend Rule 4.2 to the extent that Judges Messitte and Davis had in their respective cases, Judge Smalkin commented that expansion of Rule 4.2 beyond the Rule's "plain language ... should be made by a duly promulgated amendment to the rule itself, rather than by the gloss of caselaw." *Id.* at 958. Even if he were to follow *Camden* and *Zachair,* Judge Smalkin added,

> the Court would not disqualify counsel in this case, noting here that the former employee, Edwards, was not an attorney or an investigator, but was simply a marketer .... there is no privilege, whether arising out of trade secrets protection or the attor-

ney-client relationship, that precludes the introduction of the evidence in question. *Id.* at 959.[2]

Finally, Chief Judge Motz confronted a similar issue in an appeal from the Bankruptcy Court regarding the same parties as were involved in the *Zachair* ·case. The Plan Committee for the reorganization of the *Zachair* case principal defendant had filed an adversary proceeding, alleging wrongful deprivation of estate assets through pre–and post–bankruptcy sales and conveyances. Here, as in the *Zachair* case, the plaintiff had obtained its information in *ex parte* com·munication with the former general counsel and vice president of the principal defendant's corporation. *Plan Comm.,* 217 B.R. at 68. Again, the defendants moved to disqualify plaintiff's counsel and to suppress the information. In the proceedings below, however, the bankruptcy court found that the former .general counsel's disclosures fell within the crime-fraud exception to the attorney-client privilege. *Id.* at 69.

While observing that it would have been prudent for plaintiff's counsel first to seek permission from the bankruptcy court before interviewing the former general counsel *ex parte,* Judge Motz found the *Camden* and *Zachair* opinions distinguishable, and that he "need not reconcile or choose between the contradictory positions taken by Judges Messitte and Davis, on the one hand, and Judge Smalkin, on the other." *Id.* at 70–71.[3] Finding that the threat of professional discipline would itself provide adequate controls against the disclosures of former counsel, Judge Motz found the rule in *Camden* inapplicable to the case at .hand. *Id.* Furthermore, unlike in *Zachair,* the bankruptcy court had found that the crime-fraud exception to attorney-client confidentiality permitted the disclosures at issue. *Id.* at 71. Ac-

---

**2.** Indeed, the official Comment to Rule 4.2, although not addressing the precise concerns raised in *Camden* and *Zachair,* supports Judge Smalkin's determination that the contact in the *Davidson Supply* case did not violate the prohibitions of that Rule, regardless of its scope. *See* Rule 4.2 Comment ("If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule.").

**3.** Judge Motz further observed: "I am being cautious in my approach because I recognize that the area of contacts with former employees is a veritable minefield in which, until it is cleared by authoritative interpretation of Rule 4.2 by the Maryland Court of Appeals (or at least collegial consideration of the issues by the Fourth Circuit or the District Court), short and tentative steps are the most appropriate." *Id.*

cordingly, Judge Motz found that plaintiff's counsel had not acted improperly; even if they had, Judge Motz was of the opinion that the appropriate sanction in the case would be disciplinary action against the former general counsel and not suppression or disqualification. *Id.* at 72.

Having reviewed these opinions, it is clear that the contact in this case has not, and will not, violate Rule 4.2. First, the language of the Rule on its face does not prohibit such contact. Even considering the Comment's extension of the Rule to "any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization," such a prohibition does not encompass the former employees in this case. None of the three former employees here played any role in the alleged "steering" of the plaintiffs in this case; nor did these employees hold the type of position that would otherwise permit their statements or actions to be imputed to the defendants. On its face, then, the scope of the Rule, even considering its Comment, does not extend to such former employees.[4]

Moreover, the opinions discussed above, even at their most expansive, explicitly permit the contact at issue in this case. In *Camden,* for example, Judge Messitte observed:

> *Only* insofar as a former employee has been extensively exposed to confidential information and only insofar as an adversary attorney knows (or, it must be added, should reasonably know) of that fact, will *ex parte* contact be precluded. So long as

privileged matters are respected, *all other former employees remain fair game.*

*Id.* at 1122 (emphasis added). As discussed above, Judge Davis, too, reasoned that the prohibition on *ex parte* communication with certain former employees applied only to protect confidential or privileged communications. *See Zachair,* 965 F.Supp. at 754. Even while he disagreed with Judges Messitte and Davis, Judge Smalkin made this same observation regarding the scope of their holdings. *See Davidson Supply,* 986 F.Supp. at 959.[5]

Finally, this Court agrees with Judge Motz that "short and tentative steps are the most appropriate" when addressing this issue, *see Plan Comm.,* 217 B.R. at 70, and that even further expansion of Rule 4.2's scope, beyond that suggested in *Camden* and *Zachair,* is simply inappropriate. Among other things, Rule 4.2 serves an important purpose in protecting organizations from disadvantages they might suffer, relative to individuals, in attempting to protect confidential or privileged information. However important this purpose may be, this Rule does not, and should not, unduly restrict other important professional and ethical obligations: to investigate factual claims and to develop evidentiary foundations for those claims. *See* Fed.R.Civ.P. 11(b) (1998); Maryland Rules of Professional Conduct 1.1, 3.1. It would be overly restrictive, time-consuming, and costly to insist, as defendants essentially propose, that all investigations involving former employees require the presence or consent of opposing counsel. On the contrary, subject to otherwise applicable

---

4. Nor does this Court read the Comment's language "may be imputed to the organization" to mean "may *in this or any other conceivable case* be imputed to the organization." The Rule's clear ambit addresses actions of an organization's employees that could subject the organization to liability in the cause of action at hand. Thus, to draw a fact pattern from a case upon which the defendants rely, it might be improper to have *ex parte* communication with an adverse party's former truck driver who caused the accident at issue in the lawsuit; but it is not improper to have such contact if "the acts or omissions of the former employee [did not give] rise to the underlying litigation or the former employee [does not have] an ongoing relationship with the former employer in connection with the litiga-

tion." *See Lang v. Superior Ct.,* 170 Ariz. 602, 826 P.2d 1228, 1233 (Ct.App.1992) (following the "majority of courts considering the issue" in holding that Rule 4.2 does not prohibit *ex parte* contact between counsel and an adverse party's former employees who had no contact with counsel's client).

5. Additionally, in each of these cases counsel made contact with the former employees without the knowledge of opposing counsel. In this case, however, counsel for defendants have known of the contact with their former employees since at least March of 1997, prior to BNI's counsel obtaining the former employees' affidavits.

professional, ethical, and procedural rules, as well as counsel's own sense of prudence and discretion, *see Plan Comm.*, 217 B.R. at 71, counsel should pursue such sources of information as they are able without having to resort to the costly and burdensome system of formal discovery.

## III. Conclusion

For the foregoing reasons, the Court finds that plaintiff's counsel's *ex parte* communication with the three former employees here at issue does not violate Rule 4.2. Accordingly, the Court shall, by separate Order, DENY defendants' Motion in Limine and GRANT plaintiffs' Motion to Interview Witnesses.